Jerome BYRNES et al.

v.

The UNITED STATES.

Edren S. BURNS et al.

v.

The UNITED STATES.

Jack A. BLUE et al.

v.

The UNITED STATES.

Russel A. COWLES et al.

v.

The UNITED STATES.

Francis M. FIX et al.

v.

The UNITED STATES.

Nos. 55–60, 97–60, 171–60, 323–60, 496–59.

United States Court of Claims.
Nov. 15, 1963.
As Amended April 17 and 24, 1964.

Irving Wilner, Washington, D. C., for plaintiffs. Seegmiller, Wilner & Custer, Keith L. Seegmiller, Cecil E. Custer, Washington, D. C., and Francis J. McGan, Butte, Mont., were on the brief.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant, Joseph J. Stengel, Atty., Office of Chief Counsel, Internal Revenue Service, was on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

These five cases, consolidated for trial, present the claims of 65 investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, for overtime compensation under the Federal Employees Pay Act of 1945, 59 Stat. 295 (1945), as amended. The actual performance by a number of plaintiffs of work outside or, in addition to, the normal workweek of five eight-hour days, is not in dispute. The principal issue is whether the extra hours actually worked were officially ordered or approved within the meaning of the statute and pertinent regulations.

Section 201 of the Act provides in part as follows:

"Officers and employees to whom this title applies shall, in addition to their basic compensation, be compensated for all hours of employment, officially ordered or approved, in excess of forty hours in any administrative workweek, at overtime rates as follows: * * *" (59 Stat. 296)

Section 605 of the Act provides:

"The Civil Service Commission is hereby authorized to issue such regulations, subject to the approval of the President, as may be necessary for the administration of the foregoing provisions of this Act insofar as this Act affects officers and employees in or under the executive branch of the Government." (59 Stat. 304)

A later 1954 amendment authorized department heads with Civil Service Commission approval to provide that:

"(2) any officer or employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty and duty at night and on holidays with the officer or

employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium compensation for such duty on an annual basis in lieu of premium compensation provided by any other provisions of this Act, except for regularly scheduled overtime duty. Premium compensation under this paragraph shall be determined as an appropriate percentage (not in excess of 15 per centum) of such part of the rate of basic compensation for any such position as does not exceed the minimum scheduled rate of basic compensation provided for grade GS-9 in the Classification Act of 1949, as amended, by taking into consideration the frequency and duration of night, holiday, and unscheduled overtime duty required in such position." (Sec. 401(2), 68 Stat. 1111 (1954)

Under the authority of this statute and pertinent Civil Service Regulations, the Treasury Department delegated authority to the Internal Revenue Service for application of the 15 percent premium pay provisions, with appropriate rules for entitlement thereto.

These Regulations provided that:

"No overtime * * * shall be ordered or approved *except in writing* by an officer or employee to whom * * * authority has been specifically delegated by the head of the department. * * *" [Emphasis supplied.] (Exec. Order No. 9578, 10 Fed.Reg. 8194 (1945), U.S. Code Congressional Service 1945, p. 1267)

In all of its nine Federal Regions, the Alcohol and Tobacco Tax Division of the Internal Revenue Service authorized and paid the 15 percent annual premium pay allowed by statute in lieu of regular overtime to all of its investigators who were entitled thereto under the rules, beginning June 28, 1955. After three months, however, these payments were discontinued in the San Francisco and Omaha Regions, upon the insistence of the national office that these two regions were not faced with a critical liquor enforcement problem. The regional officers in these two regions thereafter refused to authorize premium pay or regular overtime to their investigators, including plaintiffs.

On September 23, 1955, the San Francisco Regional Chief of Enforcement, pursuant to instruction from the national office, which he later protested, notified the investigators of the termination of their 15 percent annual premium pay in lieu of overtime, but nevertheless added in the notice this statement:

"* * * and it is expected that you will perform without extra compensation any overtime that may be necessary to make good cases and achieve effective results in our enforcement work."

This directive remained in effect. On June 13, 1958, the San Francisco Region instructed its supervisors that: "Most investigators by the very nature of their responsibilities must work irregular hours and perform many hours of overtime duty."

The Civil Service Commission in December, 1955, described the position of these investigators as follows:

"* * * An agent may be frequently called upon to serve in an undercover capacity requiring that he live and associate with criminals *for lengthy periods.* * * * Performance of these duties may require *work at irregular hours,* involve personal risks, exposure to all kinds of weather, arduous physical exertion under rigorous and unusual environmental conditions, and considerable travel. * * *" [Emphasis supplied.]

The record here is replete with evidence that these plaintiffs were called upon to "work at irregular hours" and "for lengthy periods" under the same arduous conditions described above by the Civil Service Commission in prescribing the required conditions for granting pre-

mium pay. When premium pay of 15 percent was discontinued, the workweek requirements for plaintiffs remained the same throughout the period in litigation. They were, by express directive, subject to duty twenty-four hours a day. They were obliged to exercise independent judgment with respect to overtime in order to complete an investigation, or when the occasion demanded. Their overtime duty could not be administratively controlled, and it was impractical, if not impossible to secure specific advance authorization for overtime in view of the nature of the work involved.

At a meeting of officials of the Omaha Region, a statement was made that investigators could not be compelled to work overtime without additional compensation, but *they could be made to wish they had done so*. In a statement circulated to its investigators, the Omaha Division, after outlining the onerous and difficult nature of the duties involved, added this admonition:

"Investigators are subject to duty *twenty-four hours per day*, and are often on duty as much as *eighteen hours*." [Emphasis supplied.]

These directives in both regions were in clear violation of the statutes and regulations, and particularly the following Treasury Department Regulation, IR–Circular No. 57–4:

"*Section 7. Ordering or Approving Overtime Duty*

".05 A supervisor's non-compliance with the requirement that authorization or approval of overtime be in writing while at the same time either ordering overtime duty orally or requesting the performance of work outside of regular tours of duty on a voluntary basis directly or indirectly by implying that employees not 'volunteering' will be in disfavor, cannot and shall not be condoned. *Practices of this kind, which may be justified in the mind of the supervisor as being in the interest of the Service, are in direct conflict with Service policy and the intent of law.*

These practices give rise to complaints of employees being 'coerced' to work overtime without receiving pay or compensatory time off." [Emphasis supplied.]

In 1956, this court held that patrol inspectors of the Customs Border Patrol, who performed overtime work without compensation under the same statute and circumstances and regulations similar to the instant case, were entitled to recover overtime. Arnvid Anderson et al. v. United States, (1956) 142 F.Supp. 902, 136 Ct.Cl. 365.

The court found that the "Commissioner of Customs and his subordinates rationalized the concept of voluntary overtime into the course of conduct by which the patrol inspectors were induced to perform the overtime work." The court further found that "the withholding of written orders or approval reflected observance of the letter of the regulation but denial of the substance of the statute," and concluded that plaintiffs therein "were induced to perform the overtime" by the district and national officers of the Customs Bureau. The same conclusion was reached in Adams et al. v. United States, Ct.Cl.No.66–59, decided July 12, 1963.

We consider that this conclusion is equally applicable to the facts now before us. The directives to the investigators from the Omaha and San Francisco Regional Offices were issued under orders from the National Office, requiring adequate enforcement of the liquor laws, and at the same time requiring discontinuance of overtime and premium pay for essential work. There is no evidence of bad faith or subterfuge, indeed, the Regional Officers were completely candid in advising the investigators that, although they would be expected and required to work overtime, they would not be paid for it. This candor, however, does not relieve the Government of its responsibility under the statute to pay overtime or premium pay for authorized extra work. The invocation of departmental regulations requiring specific written authority for overtime cannot

avoid the plain requirements of the statute for overtime pay when the performance of this overtime is induced by the Government, as it was in Anderson, supra, and in this case.

This inducement by defendant went beyond the "tacit expectation" which this court held was not equivalent to the statutory requirement of "official order or approval" in Albright et al. v. United States, Ct.Cl.No.263–61, decided April 5, 1963. In the present case, the "expectation" was not tacit; it was made so explicit in terms as to amount to inducement and compulsion.

■ Defendant contends that if "inducement" is to be equated with an "order" or "approval" it must proceed from an authorized official, in this case, the Regional and Assistant Regional Commissioners for Alcohol and Tobacco Tax Division. The evidence in this case fully supports the conclusion by the Trial Commissioner that plaintiffs' overtime work was performed with the full knowledge, encouragement and inducement of these officials, as well as the officials in the National Office. Indeed, the Treasury Department itself provided, following the 1954 amendment to the 1945 Pay Act that:

> "[Section 4, paragraph .05] The extent of the nontaxpaid liquor traffic in any given area must necessarily be the basic factor in guiding supervisory officials in determining whether any officer who meets the individual qualifications can qualify for premium pay. Obviously, in many areas the volume or scope of the nontaxpaid liquor traffic is such as to not necessitate frequent, unscheduled overtime, consequently officers cannot qualify for premium pay. *This does not, however, relieve the individual investigator of the obligation to answer the call of duty when the occasion demands.*" [Emphasis supplied.]

The Regional and National Offices of the Alcohol and Tobacco Tax Division regularly received periodic reports of the overtime worked by all investigators in the regions during the period involved in this litigation, and either approved or acquiesced therein. These reports were prepared on the basis of regular daily reports by the investigators, including all hours of overtime and an explanation thereof to their supervisors who were primarily responsible for appraisal of essential overtime. These reports were the required basis for payment of either regular or 15 percent premium overtime pay. There is no evidence of any official disapproval of these overtime reports during the period involved in this case.

Plaintiffs' claim for overtime pay arose almost entirely after the 1954 amendment of the Federal Employees Pay Act providing for authorization of 15 percent annual premium pay in lieu of regular overtime pay. Neither the Internal Revenue Service nor the Alcohol and Tobacco Tax Division ever authorized premium pay in lieu of regular overtime during the period involved in this litigation.

■ In providing for annual premium pay in lieu of regular overtime pay by the 1954 amendment to the Pay Act of 1945 (sec. 401(2) supra), Congress made this provision mandatory when the head of the department has decided to apply this provision. Employees whose hours of duty could not be controlled administratively, and whose position required substantial amounts of irregular, unscheduled overtime, night and holiday-duty with the employee generally being responsible for determining the necessity for remaining on duty overtime, "shall receive premium compensation for such duty on an annual basis in lieu of premium compensation * * * except for regularly scheduled overtime duty."

Plaintiffs never performed "regularly scheduled overtime duty." Their hours of duty come squarely within the purview of the annual premium pay subsection, in fact, all of the investigators in the other seven Regions were paid under the authority of this same subsection. The language of the subsection is mandatory, not discretionary or permissive. The record is clear that plaintiffs were induced or coerced by their superiors to

perform a substantial amount of unscheduled, irregular overtime work during the total period involved in this litigation. There is also substantial evidence that no administrative or procedural devices could have been employed to make it possible for plaintiffs to properly perform their duties without the performance of some overtime work. Had plaintiffs confined themselves to a rigid 40-hour week in the face of the clear inducement and compulsion exerted by their superiors to require overtime work, they would have been derelict in the performance of their sworn duties in the enforcement program and revenue collection of the Alcohol and Tobacco Tax Division. Plaintiffs were required to, and did, regularly report their daily hours of work including all actual overtime to their superiors. These reports were submitted to the head of the department. When the department head first ordered 15 percent premium pay for investigators in all nine areas, and three months later removed the investigators of the Omaha and San Francisco regions from this provision, the department head knew, or should have known, from the work time reports that these plaintiffs were being required to perform substantial amounts of irregular, unscheduled overtime with the full knowledge and approval of their supervisors and that they would be required to continue this practice. We concur with the findings of the trial commissioner that when the payment of premium pay of 15 percent to plaintiffs was discontinued, their position requirements and responsibilities remained the same as before as to performance of substantial amounts of required, unscheduled and irregular overtime. In effect, these plaintiffs were told by the department, "You keep right on doing this overtime work but you aren't going to be paid for it from now on."

■■ Certainly, Congress in the 1954 amendment to the Pay Act of 1945 never intended that the head of a department could permit arbitrary discrimination between the investigators of the nine regions who were required to perform the same kind of irregular, unscheduled overtime. At the very least, the removal of these plaintiffs in the San Francisco and Omaha regions from the purview of the statutory provision for 15 percent premium overtime, while the investigators of the other seven regions were being compensated under the same Act, was arbitrary and unreasonable, in view of the established record of overtime performed by these plaintiffs under the compulsion of both duty and directive.

■ Plaintiffs never performed "regularly scheduled overtime duty" as provided for in this subsection, and they are entitled to the same annual premium pay of 15 percent allowed in the other seven Regions.

Section 1939.5(7) (d) of the Internal Revenue Manual states that "rarely can time spent in travel status outside the regularly scheduled tours of duty be considered as overtime work."

■ The record does not warrant the inclusion of hours of travel accomplished by any of the plaintiffs herein for purposes of allowing overtime pay provided by the Federal Employees Pay Act of 1945, as amended, supra. It was an incident of the performance of duty, necessary and authorized, but the record here does not warrant inclusion of the hours of ordinary normal travel as a basis of granting extra pay beyond the per diem allowed while away from official station.

Defendant has pleaded for a denial of any recovery for the years preceding 1956 in the claims presented by plaintiffs Grimes, Gibson, and Lashbrook under "the equitable rule of laches." All periods involved in computations made concerning any of the plaintiffs are within the six-year period immediately preceding the filing dates of the claims. Obviously, plaintiffs herein are not responsible for any destruction by defendant of any records pertaining to these claims.

With respect to the irregular, unscheduled overtime duty and duty at night and on holidays which could not be controlled administratively within the meaning of

section 401(2) of the 1954 amendment to the Federal Employees Pay Act, 68 Stat. 1111, we conclude that plaintiffs in these actions are entitled to regular overtime pay for such duty for the periods involved in this litigation up to July 1, 1955, and to 15 percent premium compensation for such duty thereafter on an annual basis computed under section 401 (2), supra, and under the same regulations of the Civil Service Commission and the Alcohol and Tobacco Tax Division that were applicable to the same class of investigators during the same period of this litigation, less any premium compensation already paid plaintiffs for such duty and less compensatory time-off actually received. Judgment is entered to this effect, with the amount due each plaintiff to be determined in further proceedings under Rule 38(c).

WHITAKER, Judge (concurring in part and dissenting in part).

The 1954 amendment to the overtime Act gives the Department head authority to pay premium compensation for overtime work on an annual basis. The Department head in these cases decided that the situation in the San Francisco and Omaha offices did not warrant authorizing this premium pay on an annual basis; hence, it seems to me to follow that, so far as these employees were concerned, the amendment made by the 1954 Act was inapplicable to them, and that their rights are governed by the prior Act, to wit, the Federal Employees Pay Act of 1945, 59 Stat. 295.

I agree that the overtime worked by the plaintiffs in these cases was induced by those having authority to do so and that this is equivalent to their having been ordered to do so when the occasion demanded. However, the purpose of the statutory requirement that overtime was allowable only when it was "officially ordered or approved," was to repose discretion for the determination of the necessity for the overtime work on an authorized official and not to leave it to the employee's own discretion. In order for plaintiffs to recover I think it is necessary to show that one of two things happened, either that an authorized officer, not generally ordered overtime, but ordered it in each particular case; or, if he did not order it, that he thereafter approved it.

As I said in the beginning, there is no doubt about the fact that employees were induced to work overtime when the situation demanded it. But I think it was still necessary for an authorized person to give his stamp of approval to the fact that the particular situation in each case demanded the overtime work.

It seems to me that this requirement has been met. When the individual investigator filed his report, showing overtime worked, and this was approved by his supervisor, and these reports were sent to the office of the person who had the authority to order or approve overtime, and this official took no action with respect to it, his inaction constitutes approval. The purpose of sending him these reports was to apprize him of what was going on, including what overtime each employee had worked. He had general knowledge that the employees of this office as a matter of practice worked overtime. Indeed, he had encouraged it, and said that he expected it. It was a part of the purpose of these reports to let him know whether or not they were doing so. He is charged with knowledge of their contents, and his failure to disapprove of the overtime shown on them amounts to an approval of it.

Since the Department head made the 1954 amendment inapplicable to the offices in which plaintiffs worked and, therefore, they are not entitled to recover under it, they, perforce, are entitled to recover under the Federal Employees Pay Act of 1945 as it was before the 1954 amendment.