Richard G. EVANS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 58–85C.

United States Claims Court.

Jan. 26, 1988.

Robert B. King, Charleston, W.V., for plaintiff.

Eric Miller, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION

FUTEY, Judge.

This action is before the court on plaintiff's motion for summary judgment and defendant's motion for partial dismissal and cross-motion for summary judgment. Plaintiff, a retired Deputy United States Marshal, seeks judgment against defendant

in the form of a court order declaring illegal defendant's refusal to calculate plaintiff's retirement benefits and related emoluments upon a basis which includes Administratively Uncontrollable Overtime (AUO) during his last three years of employment, and awarding plaintiff damages for his resulting monetary losses. Plaintiff, who retired in 1981, argues that the decision of the Department of Justice to eliminate AUO as a method of overtime compensation for Deputy U.S. Marshals in 1978 was both unlawful and improperly implemented, so that AUO from 1978 to 1981 should be calculated into plaintiff's benefits. Defendant argues that this court has no jurisdiction to grant the declaratory relief plaintiff seeks, and that the Department of Justice acted properly and effectively in eliminating AUO as a method of overtime compensation for Deputy U.S. Marshals in 1978. As such, plaintiff has no right to have his retirement benefits and related emoluments calculated upon a basis including AUO from 1978 to 1981. For the reasons stated hereinafter, the court denies plaintiff's motion for summary judgment, grants defendant's cross-motion for summary judgment, and dismisses the complaint.

## FACTS

Plaintiff, Chief Deputy United States Marshal for the Southern District of West Virginia, retired from the United States Marshals Service on September 4, 1981. The U.S. Marshals Service is a Bureau of the Department of Justice. From 1955 until October 21, 1978, Deputy U.S. Marshals were compensated for overtime work primarily by the Administratively Uncontrollable Overtime (AUO) payment system set forth in 5 U.S.C. § 5545(c)(2).[1]

Some overtime work during those years was compensated by the time and one-half payment system set forth in 5 U.S.C. § 5542.[2] Since 1974, overtime compensation received under the AUO system has been calculated into a Deputy Marshal's retirement benefits. Overtime compensation received under the time and one-half system has not been calculated into a Deputy Marshal's retirement benefits.

On December 15, 1977, the U.S. Marshals Service issued an order (USM 1551.1) advising all of its supervisory personnel of the policies and procedures governing payment of overtime. The order was accompanied by an appendix listing types of overtime work assignments and the appropriateness of regular overtime (time and one-half) versus AUO compensation therefor. USM 1551.1 continued to be listed in the U.S. Marshals Service biannual indexes of current orders in the early 1980's.

On September 29, 1978, however, the Department of Justice acted to terminate the use of AUO for United States Marshals. On that date a change was issued with respect to a prior order (DOJ 1551.4A, dated August 1, 1975) whereby Deputy U.S. Marshals were deleted from an appendix listing DOJ positions for which AUO was authorized.

On October 16, 1978, the Director of the U.S. Marshals Service, William E. Hall, sent a memorandum to all personnel concerning the "Elimination of AUO." In addition to discussing the monetary ramifications of the DOJ order, the memorandum recounted the historical background that led to the Justice Department's decision. Director Hall indicated that "the intent (of AUO) was to provide some basis for compensating Federal law enforcement officers who worked overtime under conditions that did not meet the criteria for time and one-half pay ..." but that the system had long been a "subject of controversy" for the U.S. Marshals Service. Deputy Marshals had filed numerous "grievances and administrative claims," as well as "nearly thirty lawsuits," charging that the AUO system was improper for the duties of a Deputy

---

1. AUO applies to "irregular, unscheduled overtime duty" and is paid on a percentage basis ranging from 10% to 25% of that part of the employee's annual salary not in excess of GS-10/Step 1.

2. This system applies to "officially ordered or approved" overtime duty, and compensation is paid on an hourly basis at "time and one-half" the employee's basic rate of pay.

Marshal and arguing that Deputy Marshals should be entitled to overtime compensation at the rate of time and one-half for any and all duties. Mr. Hall characterized these challenges to AUO as "compound(ing) the nightmarish administrative difficulties and costs inherent in administering two overtime pay systems." While recognizing that the elimination of AUO would have some adverse consequences, including the calculation of retirement benefits for Deputy Marshals, Mr. Hall characterized the action as "correct and necessary." Moreover, he indicated that the decision was entirely within the discretion of the Department of Justice. Director Hall summed up the action as follows: "... the Department's initiatives in eliminating AUO are the result of many years of unrest and litigation by Deputy Marshals over the AUO system, and, importantly, are initiatives solely within the Department's prerogative to pursue. Simply put, the Marshals Service was placed in the AUO system by the Department of Justice in the 1950's, and now the Department has taken the Service out of that system."

Immediately after retiring from the U.S. Marshals Service, Richard G. Evans filed suit against the United States on September 21, 1981, in the United States District Court for the Southern District of West Virginia challenging the elimination of the AUO pay system as unconstitutional and unlawful. Evans claimed that his retirement benefits, which are based on his three highest years of salary with the Marshals Service, were lowered because the absence of AUO after October 1978 eliminated all overtime compensation he received from then until his retirement in September 1981 from the calculation of his retirement benefits. As a result, Evans claimed losses of $3,000 annually and, based on his life expectancy, a prospective total of $70,000. Defendant moved to dismiss the complaint for lack of jurisdiction, citing 28 U.S.C. § 1346(a)(2) as limiting district court jurisdiction of monetary actions against the

United States to claims not exceeding $10,000.

In considering whether to grant defendant's motion, the district court had to address the issue of whether the relief sought was essentially monetary since plaintiff was also seeking declaratory relief. The court held, in a memorandum opinion dated January 21, 1985, that "the thrust of (plaintiff's) complaint is monetary," [3] and that the amount claimed exceeded the district court's jurisdiction. The court went on to state that "... a claim for declaratory relief when sought in conjunction with a monetary award does not oust the jurisdiction of the Claims Court, which Court may render full relief. *Gentry v. United States*, 546 F.2d 343, 212 Ct.Cl. 1 (1976); *Portsmouth Redevelopment and Housing Authority v. Pierce*, 706 F.2d 471 (4th Cir. 1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 393, 78 L.Ed.2d 336 (1983); *Cook v. Arentzen*, 582 F.2d 870 (4th Cir.1978)." [4] Accordingly, the district court determined that Evans' action should be transferred to the United States Claims Court pursuant to 28 U.S.C. § 1631.

On February 25, 1985, Richard G. Evans filed a "Complaint for Declaratory Relief" in this court, citing Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201, as the basis therefor. This complaint seeks the same monetary and declaratory relief previously sought in the district court action. Moreover, as in the district court action, plaintiff filed suit "individually, and as representative of that class of Deputy United States Marshals against which unlawful practices and policies are being imposed and enforced by the defendant." Plaintiff advised this court in a status conference held on October 9, 1987, however, that the class action has not been pursued. Accordingly, the case at bar is an individual action.[5]

Plaintiff filed a motion for summary judgment and supporting memorandum in November 1985. Defendant's motion for

3. *Evans v. United States*, C.A. No. 81–2339, D.C. S.D.W.Va., 1985, p. 2a.

4. *Ibid*, p. 3a.

5. Transcript of Proceedings, pp. 5–6.

partial dismissal and cross-motion for summary judgment were filed in January 1986. Oral argument was heard on October 28, 1987.

## DISCUSSION

### I.

Notwithstanding the phraseology of the complaint, this court finds, like the federal district court before it, that plaintiff's action is essentially monetary. The characterization of the action as a "complaint for declaratory relief" seems to be a remnant of the language plaintiff used in his district court complaint. In his motion for summary judgment, plaintiff abandons the term declaratory relief and moves this Court straightforwardly "for an Order awarding plaintiff Evans the amount of unliquidated damages which he has sustained by reason of the defendant government's refusal to calculate plaintiff Evans' retirement benefits and other emoluments on the basis of the (AUO pay system)...." Accordingly, the thrust of this action is monetary and the declaratory relief sought herein subordinate thereto. As such, the court will move directly to the merits of the case before considering the propriety of plaintiff's action for declaratory relief.

### II.

While the essentially monetary nature of this suit presents the outlines of a Tucker Act (28 U.S.C. § 1491(a)) cause of action, plaintiff cannot prevail without establishing a substantive right to money damages enforceable against the United States. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Alexander v. United States*, 5 Cl.Ct. 57, 60 (1984), *aff'd mem.*, 758 F.2d 667 (Fed.Cir. 1984). In claims such as the case at bar based on an alleged violation of constitutional, statutory, or regulatory law, the provision(s) relied upon by plaintiff must mandate that compensation be paid by the federal government for the damage sustained. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607 (1967); *Heagy v. United States*, 12 Cl.Ct. 694, 697 (1987). Otherwise, the jurisdiction of this court cannot be invoked.

The AUO statute involved herein, 5 U.S.C. § 5545(c)(2), makes the determination of whether AUO should be used as a method of overtime compensation a matter of discretion by the head of an agency. The statute states, in pertinent part, as follows:

"The head of an agency, with the approval of the Office of Personnel Management *may* provide that ... an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled overtime duty ... shall receive premium pay for this duty (under the AUO system) ..." (Emphasis added).

The foregoing language is clearly permissive in nature, not mandatory. Even if the criteria for AUO compensation are met, the head of an agency *may* decide *not* to authorize AUO compensation for overtime work. Thus, 5 U.S.C. § 5545(c)(2) is not, in an of itself, a money mandating statute on which plaintiff can base a claim for relief in this court.

Plaintiff argues, however, that the U.S. Marshals Service Order 1551.1, in conjunction with the Justice Department's Order 1551.4A, constitutes regulatory authority mandating payment of AUO compensation during the pertinent years 1978–1981. DOJ Order 1551.4A of August 1, 1975, lifting much of its wording directly from the statutory language of 5 U.S.C. § 5545(c)(2), set forth the following policy with respect to the payment of AUO:

Employees in positions in which the hours of duty cannot be controlled administratively, and which require substantial amounts of irregular or occasional overtime duty with the employees generally being responsible for recognizing, without supervision, circumstances which require them to remain on or return to duty outside of regular duty hours, shall be paid administratively uncontrollable overtime pay for such irregular or occasional overtime work.

Appendix 1 of this order listed Deputy United States Marshal(s) as one of seven categories of positions within the Department of Justice for which AUO was authorized. The Marshals Service applied the above criteria to its own personnel in USM Order 1551.1 of December 15, 1977. Despite DOJ's change order of September 29, 1978, deleting Deputy Marshals from the list of Department positions authorized to receive AUO. the Marshals Service continued to list its Order 1551.1 in subsequent indexes of current directives. (See, *inter alia,* USM Orders 0000.2D of February 6, 1981, 0000.2E of August 20, 1981, and 0000.2F of February 17, 1982.) Plaintiff cites the continued publication of USM Order 1551.1 and defendant's stipulation that the subject order "has not been changed" as evidence that DOJ's change order was never properly implemented. Accordingly, DOJ's original Order 1551.4A and USM Order 1551.1 are still in effect, and Deputy U.S. Marshals should still be entitled to AUO compensation thereunder.

■ The court finds the foregoing argument unpersuasive. The Marshals Service, as a bureau within the Department of Justice, is subject to DOJ's general departmental orders. DOJ's change to Order 1551.-4A, therefore, takes precedence over USM Order 1551.1. Marshals Service Director Hall acknowledged as much in his memorandum of October 16, 1978, to all of the Service's personnel, in which he stated that "the Department's initiatives in eliminating AUO are ... solely within the Department's prerogatives to pursue."

USM Order 1551.1 dealt with the broad subject of "Overtime Pay Policies and Practices" in the Marshals Service. AUO compensation was only one of the matters addressed therein. The continued publication of USM Order 1551.1 after 1978, therefore, does not conflict with DOJ's change order of September 1978 to the extent that such publication affirmed the ongoing validity of the non-AUO portions of the Marshals Service order. The AUO provisions, however, were clearly superceded by the DOJ order eliminating this system of overtime compensation for the Marshals Service. Therefore, the principle that an agency is bound to follow its own regulations, as enunciated in *Bray v. United States,* 515 F.2d 1383, 207 Ct.Cl. 60, 80 (1975) and *Husky Oil Co. v. Dept. of Energy,* 582 F.2d 644, 651 (Em. App.1978), is applicable for the Marshals Service and Order 1551.1 only as to those portions of the order which have remained in effect since September 1978.

### III.

Plaintiff argues that the elimination of AUO for Deputy Marshals was unconstitutionally discriminatory, as other law enforcement officials in the Department of Justice performing similar tasks were not affected by the DOJ change order of September 1978. Plaintiff maintains there was no rational basis or legitimate governmental interest to single out Deputy Marshals for this treatment. Thus, the Justice Department's elimination of AUO for Deputy Marshals must be regarded as arbitrary and capricious and, as such, a violation of plaintiff's due process and equal protection rights under the Constitution. Moreover, plaintiff alleges that the DOJ change order contravenes the fundamental policy for federal employees of equal pay for substantially equal work, as set forth at 5 U.S.C. § 5301(a)(1).

■ The court finds no merit to any of this argumentation. It has previously been held by this court, in another case involving the propriety of the Justice Department's inclusion of Deputy Marshals in the AUO pay system, that the Department's decision "must be upheld, unless (1) it clearly contradicts the terms or purpose of the statute, or (2) it clearly contradicts the implementing regulations of the Civil Service Commission (now Office of Personnel Management)." *Bennett v. United States,* 4 Cl.Ct. 330, 337 (1984). As previously discussed, the DOJ change order of September 29, 1978, was in conformance with the discretionary powers conferred by the AUO statute, and the record establishes no violation of any implementing regulations. The memorandum which Director Hall sent to all Marshals Service personnel on October 16, 1978, speaks eloquently of the con-

troversies emanating from the AUO system and the need for corrective action. The Hall memorandum referred to the many "grievances," "administrative claims," and "lawsuits" filed by Deputy Marshals "compound(ing) the nightmarish administrative difficulties and costs" of running two overtime pay systems. It was certainly a rational use of DOJ's discretionary authority to rid the Marshals Service of these problems, and thereby further the legitimate governmental purpose of bringing more efficient management to this arm of the Justice Department. Director Hall acknowledged as much by terming DOJ's action as "correct and necessary."

Plaintiff cites *Byrnes, et al. v. United States*, 330 F.2d 986, 163 Ct.Cl. 167 (1964), as offering a rationale which this court should apply in the instant case. *Byrnes* involved an attempt by the Alcohol and Tobacco Tax Division of the Internal Revenue Service to remove investigators in two of its nine regions from AUO coverage, while retaining such coverage for investigators in the seven other regions. The court held this action to be "arbitrary and unreasonable," observing that Congress, in passing the AUO statute, "never intended that the head of a department could permit arbitrary discrimination between the investigators of the nine regions who were required to perform the same kind of irregular, unscheduled overtime." *Ibid*, at 991, 163 Ct.Cl. at 176. Accordingly, the plaintiffs in the two affected regions were also entitled to AUO compensation for their overtime work.

In the case at bar, however, the Department of Justice did not act in an arbitrary or unreasonable manner. The DOJ change order of September 1978 did not discriminate among different Deputy Marshals, but rather eliminated AUO coverage for this entire class of employees. Moreover, as previously discussed, there were compelling reasons for the Department's action. In short, this court is satisfied that the Department properly exercised the discretionary authority granted it under the AUO statute. The *Byrnes* rationale, therefore, is inapposite here.

■ It is well established that the jurisdiction of this court does not extend to claims based on the due process and equal protection clauses of the Constitution, since these clauses cannot be interpreted as mandating the payment of money by the United States. *Bounds v. United States*, 1 Cl.Ct. 215, 216 (1983); *Rogers, et al. v. United States*, 14 Cl.Ct. 39 (1987). Plaintiff's citation of 5 U.S.C. § 5301(a)(1) is equally unavailing, since this provision cannot be interpreted as making mandatory an overtime pay system which is, by statutory definition, discretionary.

### IV.

Plaintiff also argues that the United States should be estopped from denying his continued entitlement to AUO coverage from 1978 to 1981 since the continuing validity of USM Order 1551.1, delineating the "Overtime Pay Policy and Practices" of the Marshals Service, was affirmed in Marshals Service orders of the early 1980s and plaintiff justly relied thereon. Plaintiff contends that estoppel of the United States is appropriate in this case because "justice and fair play require it." *United States v. Lazy FC Ranch*, 481 F.2d 985, 988 (9th Cir.1973). The court does not agree.

■ The doctrine of equitable estoppel is triggered when the following elements are established: (1) the party to be estopped must know the facts; (2) the conduct of the party to be estopped must be intended to induce certain actions of the innocent party, or be such that the innocent party has a right to believe it is so intended; (3) the innocent party must be ignorant of the true facts; and (4) he must rely on the conduct of the party to be estopped to his injury. *Pasco Enterprises v. United States*, 13 Cl.Ct. 302, 307 (1987); *Emeco Industries, Inc. v. United States*, 485 F.2d 652, 202 Ct.Cl. 1006, 1015 (1973). Elements two, three, and four, above, have not been satisfied in this case. The change order issued by the Department of Justice was not intended to induce any actions by Deputy Marshals in general or plaintiff Evans in particular. It simply advised them that the AUO pay system was being eliminated.

**200**

Plaintiff cannot assert ignorance of this fact because he was specifically advised, not only in the DOJ order, but also in Director Hall's memorandum to all Marshals Service personnel, of the elimination of AUO and the monetary ramifications thereof. Nor has Evans demonstrated that he relied upon DOJ's action to his injury, since there is no evidence that his conduct (continuing to work until retirement age) was in any way affected by the elimination of the AUO pay system. (Indeed, during his last three years of employment, plaintiff's basic compensation for overtime work was higher under the time and one-half system than it would have been under AUO.)[6]

In sum, there is no evidence of any "wrongful conduct" by the government which "threatens to work a serious injustice" upon plaintiff, as the court found in *Lazy FC Ranch, supra,* at 989. Plaintiff's estoppel argument must therefore be rejected.

### CONCLUSION

For all of the reasons discussed herein, plaintiff has failed to establish any entitlement to the monetary relief requested. The action for declaratory relief is thereby rendered moot. The Clerk is directed to enter judgment denying plaintiff's motion for summary judgment, granting defendant's cross-motion for summary judgment, and dismissing the complaint.

IT IS SO ORDERED.

---

**6.** Since the court has held for defendant in this action, it need not reach the issue as to the amount which should be deducted in calculating an award to account for the increased income plaintiff received his last three years by virtue of receiving overtime pay under the time and one-half, as opposed to the AUO, pay system.