James HANNON, et al., Plaintiffs,

v.

UNITED STATES, Defendant.

No. 91–1334C.

United States Court of Federal Claims.

Aug. 19, 1993.

Irving Kator, Kator, Scott & Heller, Chtd., Washington, DC, for plaintiff. Katherine L. Garrett, of counsel.

Sean P. Murphy, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, DC, with whom were Thomas W. Petersen, Asst. Director, David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## OPINION

HORN, Judge.

This case is before the court on defendant's motion to partially dismiss plaintiffs' complaint for lack of jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(1) and (4) of the Rules of the United States Court of Federal Claims (RCFC).[1] Defendant alleges that plaintiffs are not entitled to "claims for Administratively Uncontrollable Overtime ("AUO") because they have no statutory right to AUO, have not alleged a money-mandating statute entitling them to lodge jurisdiction in this court, have not made a claim for money from the Drug Enforcement Agency ("DEA"), and are not 'law enforcement officers' within the meaning of the Federal Employees Pay Act (the "Act")." Plaintiffs include three counts in their complaint, although the interrelationship of the three counts is not articulated. In its motion to dismiss, however, defendant's counsel fails to address count III. Defendant states:

> Plaintiffs are Diversion Investigators employed by a Bureau of the Department of Justice ("DOJ"), the DEA, who are seeking premium pay in the form of AUO. Plaintiffs contend that they are entitled to AUO pursuant to 5 U.S.C. § 5545, which provides that the head of an agency "may" authorize the payment

of AUO. In addition to declaratory relief, plaintiffs seek recovery of overtime compensation that they allege was required to be forfeited. In count I of their complaint, plaintiffs allege that, because "Special Agents" of the DEA are granted AUO, they should also be entitled to such pay. In count II of the complaint, plaintiffs allege that defendant has violated the Federal Employee Compensation Act, 5 U.S.C. § 5541 *et seq.*[2]

At oral argument, however, defendant's counsel began his presentation by asking the court to dismiss both counts I and III of plaintiffs' complaint.

In support of its motion to partially dismiss, defendant alleges that 5 U.S.C. § 5545(c)(2) (1988), is discretionary, not money mandating and, therefore, that this court cannot take jurisdiction over plaintiffs' claims for AUO. After a thorough review of the filings in this case and after hearing oral argument on defendant's motion, the court concludes that, given the facts of the case at bar, 5 U.S.C. § 5545 can be relied on by plaintiffs as a money mandating statute to give this court jurisdiction over plaintiffs' case under the Tucker Act, 28 U.S.C. § 1491 (1988).[3] Additionally, the court finds that plaintiffs have alleged sufficient facts to support an arguable claim for uncompensated AUO, which

---

1. Following the enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court are unaffected by the legislation, other than with respect to the name change of the court and, therefore, the name change of the rules. However, General Order 33 also indicated that if there is a conflict between the new statute and the rules, the statute will control.

2. A footnote in plaintiffs' brief inserted at the end of this quote reads: "[w]ith respect to count II of plaintiffs' complaint, defendant plans to submit a motion for summary judgment, pursuant to Rule 56(c) of the rules of this Court, after discovery."

3. Plaintiffs improperly cite to 28 U.S.C. §§ 1331, 1346 and 5 U.S.C. § 702 as establishing proper jurisdiction in this court over their claims. The court notes that 28 U.S.C. §§ 1331 and 1346 are statutes which deal with the jurisdiction of United States District Courts and not with the jurisdiction of this court. Moreover, 5 U.S.C. § 702 deals not with jurisdiction of a particular court, but with the accrual of the "Right of Review." Nonetheless, the court has taken a substance over form approach when deciding this motion. As stated in Rule 8(f) of the Federal Rules of Civil Procedure and 8(f) of the Rules of the United States Court of Federal Claims, "all pleadings shall be so construed as to do substantial justice." Therefore, pleadings should be "construed liberally in favor of the pleader." *Elwonger v. Career Academy, Inc.*, 54 F.R.D. 514, 515 (E.D.Wisc.1972) (quoting *United States v. White County Bridge Comm'n*, 275 F.2d 529, 535 (7th Cir.1960). *See also Schiavone v. Fortune,* 477 U.S. 21, 27, 106 S.Ct. 2379, 2383, 91 L.Ed.2d 18 (1986).

may be heard by this court. Accordingly, defendant's motion for partial dismissal of plaintiffs' complaint is **DENIED.**

## FACTS

Plaintiffs, James Hannon, John Buckley and Lewis Colosimo, brought this action on behalf of themselves and approximately 340 other similarly situated Drug Enforcement Agency (DEA) Diversion Investigators (GS/GM-1810), ranging from grade 5 through grade 16, who work for the United States Department of Justice (DOJ). Count I of plaintiffs' complaint, which is the subject of this motion, alleges that the decision to deny plaintiffs AUO, while providing it to special agents, is arbitrary, capricious and not in accordance with the law. Plaintiffs argue that under the existing statute, regulation and DOJ orders, they too are entitled to AUO compensation.

Investigators within DEA are classified in two groups, the GS-1810 Diversion Investigators in the General Investigating Series and the GS-1811 Criminal Investigators, referred to in the complaint as special agents. According to the Grade-Level Guides for Classifying Investigator Positions (identified as TS-8, February 1972 [4]), issued by the United States Civil Service Commission (now the Office of Personnel Management), GS-1810, General Investigating Series positions are described as follows:

This series includes positions that involve planning and conducting investigations covering the character, practices, suitability or qualifications of persons or organizations seeking, claiming, or receiving Federal benefits, permits, or employment when the results of the investigation are used to make or invoke administrative judgments, sanctions, or penalties. These positions require primarily a knowledge of investigative techniques and a knowledge of the laws, rules, regulations and objectives of the employing agency; skill in interviewing, following leads, researching records, and preparing reports; and the ability to elicit informa-

tion helpful to the investigation from persons in all walks of life.

By contrast, the guidelines describe the GS-1811, Criminal Investigator Series, as follows:

This series includes positions that involve planning and conducting investigations relating to alleged or suspected violations of criminal laws. These positions require primarily a knowledge of investigative techniques and a knowledge of the laws of evidence, the rules of criminal procedure, and precedent court decisions concerning admissibility of evidence, constitutional rights, search and seizure and related issues; the ability to recognize, develop and present evidence that reconstructs events, sequences, and time elements, and establishes relationships, responsibilities, legal liabilities, conflicts of interest, in a manner that meets requirements for presentation in various legal hearings and court proceedings; and skill in applying the techniques required in performing such duties as maintaining surveillance, performing undercover work, and advising and assisting the U.S. Attorney in and out of court.

The guidelines also indicate that "[t]he key distinctions between the general and criminal investigating occupations lie in the different kinds of investigations performed by each and the different knowledge, skills, and abilities those different kinds of investigations impose."

Plaintiffs' appendix includes selections from a *Study of the Diversion Program*, which, although undated, was prepared in response to a request for the study from the Acting Administrator of DEA in January 1990. The study concludes:

In formulating its recommendation, the Study Team reviewed the classification guides issues by the Office of Personnel Management (OPM) to determine what differences existed between the current 1810 and 1811 positions in DEA. As originally conceived, the 1810 position placed more emphasis on administrative actions and sanctions. However, as

---

4. The guidelines were apparently issued in 1972 and still appear to be applicable.

DEA's Diversion Program has evolved, its resources have shifted more and more away from wholesaler/manufacturer compliance to the conduct of diversion criminal investigations, i.e., investigations of DEA registrants suspected of violating the provisions of the Controlled Substance Act.

In performing these investigations, 1810s use all of the techniques used by 1811s to conduct their criminal investigations, except those currently precluded by the DEA policy document known as the "Miller Memorandum".

This report also supports claims by the GS–1810s that, "1) they work overtime on both diversion and criminal investigations and regulatory audits, but are rarely compensated and 2) a portion of this time is unscheduled and uncontrollable...."

On August 1, 1975, DOJ issued Order 1551.4A, allowing for payment of AUO and outlining its policy regarding such payment. The policy was modified September 29, 1978.[5] Particular positions within DOJ which are considered eligible for AUO, and for which the DOJ order states "Uncontrollable Overtime Pay is Authorized," are outlined in Appendix 1 to DOJ Order 1551.4A. These include: 1) Airplane pilot engaged in air-to-ground border patrol activities; 2) Border patrol agent; 3) Criminal investigator; 4) General investigator, GS–9 and above; 5) Officer-in-charge, Immigration and Naturalization Service domestic office, engaged in investigative duties; and 6) Immigration officer, foreign area, engaged in investigative duties. While DEA does award AUO to its GS–1811s in accordance with the statute, regulations and internal orders, plaintiffs allege that the Department of Justice has refused to compensate its GS–1810s in the same manner. Plaintiffs, therefore, filed the instant complaint challenging DOJ's overtime compensation method as applied to work they had performed.

Defendant argues that a decision to authorize AUO is discretionary, and argues that 5 U.S.C. § 5545(c) is not a money

mandating statute and, therefore, cannot be used to confer jurisdiction on this court.

### DISCUSSION

The Tucker Act, 28 U.S.C. § 1491, is the primary statute defining the jurisdiction of this court. The Tucker Act confers jurisdiction on this court over any claim against the United States, "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department...." 28 U.S.C. § 1491(a)(1). Jurisdiction under the Tucker Act has been defined as follows:

> But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.

*Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967) (footnotes and citations omitted). "The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan v. United States,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). "A

---

5. The copy of DOJ 1551.4A, dated August 1, 1975, which was included in defendant's motion to partially dismiss, includes a notation "REPRINT includes: CHG 1 9/29/78."

substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.' Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (quoting 28 U.S.C. § 1491). Therefore, "[a] claimant must look beyond the Tucker Act to discover and plead a money-mandating predicate upon which to complete jurisdiction." *Westech Corp. v. United States,* 20 Cl.Ct. 745, 748 (1990) (citing *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983)); *see also Dehne v. United States,* 970 F.2d 890, 893 (Fed.Cir. 1992); *Ashgar v. United States,* 23 Cl.Ct. 226, 230–31 (1991).

■ A statute is money mandating if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp.,* 178 Ct.Cl. at 607, 372 F.2d at 1009; *Mitchell,* 463 U.S. at 218, 103 S.Ct. at 2968. If a money mandating statute is found, no further waiver of sovereign immunity, beyond the Tucker Act, need be pled. *Mitchell,* 463 U.S. at 218, 103 S.Ct. at 2968; *Huston v. United States,* 956 F.2d 259, 261 (Fed.Cir.1992). Moreover, the United States Court of Claims, the predecessor to this court, has held that, even though the plaintiff may not ultimately prevail, "a claimant who says he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable." *Ralston Steel Corp. v. United States,* 169 Ct.Cl. 119, 125, 340 F.2d 663, 667–68, *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965); *accord Sanders v. United States,* 219 Ct.Cl. 285, 295, 594 F.2d 804, 809–10 (1979); *Eastport S.S. Corp.,* 178 Ct.Cl. at 606, 372 F.2d at 1008.

■ The operative question, therefore, in deciding the instant motion brought by defendant to partially dismiss, is whether 5 U.S.C. § 5545 is arguably a money mandating statute. AUO is provided for in 5 U.S.C. § 5545(c). That statute reads:

(c) The head of an agency, with the approval of the Office of Personnel Management, *may* provide that—

(1) an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, *shall receive* premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for irregular, unscheduled overtime duty in excess of his regularly scheduled weekly tour. Premium pay under this paragraph is determined as an appropriate percentage, not in excess of 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10 (or, for a position described in section 5542(a)(3) of this title, of the basic pay of the position), by taking into consideration the number of hours of actual work required in the position, the number of hours required in a standby status at or within the confines of the station, the extent to which the duties of the position are made more onerous by night, Sunday, or holiday work, or by being extended over periods of more than 40 hours a week, and other relevant factors; *or*

(2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, *shall receive* premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10

percent nor more than 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position.

(Emphasis added.)[6] Defendant reads this statute as purely discretionary, focusing on the introductory language in 5 U.S.C. § 5545(c), "[t]he head of an agency ... *may* provide...." Plaintiffs, however, categorize the statute as potentially money mandating, focusing on the language in subsection (c)(2), which states "an employee ... *shall receive* premium pay...."

█ Statutory interpretation begins with the language of the statute itself. *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). Furthermore, if the statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying that statute. *Reid v. Department of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). As stated by the United States Court of Appeals for the Federal Circuit, if the statute is clear:

> The function of the court is then limited to enforcing the statute according to its terms (citations omitted), unless a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would

lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States*, 618 F.2d 736, 739[,] 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*, 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid*, 793 F.2d at 281–82.

Defendant contends that whether a statute is money mandating is determined by the level of discretion offered the agency. Defendant cites to *Bradley v. United States*, 870 F.2d 1578, 1580 (Fed.Cir.1989) and *Adair v. United States*, 227 Ct.Cl. 345, 352, 648 F.2d 1318, 1322 (1981) in support of its position. Defendant also argues that when the agency's discretion to adjust pay pursuant to a statute is unlimited, that statute cannot be considered a money mandating statute. Defendant's argument, however, fails on its own terms. 5 U.S.C. § 5545(c) is not entirely discretionary. Within 5 U.S.C. § 5545(c), Congress has used both the words "may" and "shall." These words appear to differentiate discretionary from mandatory tasks, assigned to the agency heads. *See Gray v. United States*, 886 F.2d 1305, 1307 (Fed.Cir.1989). The statute, on its face, provides that the head of an agency *may*, in his/her discretion, provide for overtime pay in the form of AUO. The agency head is then offered two alternatives in subsections 5 U.S.C. § 5545(c)(1) and 5 U.S.C. § 5545(c)(2). If the agency head implements subsection (c), however, both subsections (c)(1) and (c)(2) require that employees who are qualified under the statute and regulations *"shall receive"* premium pay for duty time served. In other words, whether or not an agency adopts AUO as a method of overtime compensation is, as defendant contends, discretionary; however, once that agency has made the determination that

---

**6.** 5 U.S.C. § 5545(c)(1) has been included here because it is cited to in plaintiffs' complaint, although they should have cited to 5 U.S.C. § 5545(c)(2). Plaintiffs' brief in opposition to defendant's motion for partial dismissal, however, discusses 5 U.S.C. § 5545(c)(2) in an appar-

ent attempt to remedy the earlier mistake. Presumably, plaintiffs' reference in their filing only to subsection (c)(1) was in error. The court notes that 5 U.S.C. § 5545(c)(1) and 5 U.S.C. § 5545(c)(2) are separated by the word "or" in the text of the statute.

the AUO provisions should be implemented, those employees qualified under the statute and agency regulation *"shall receive* premium pay for this duty on an annual basis...."￼ In the instant case, by virtue of United States Department of Justice Order DOJ 1551.4A, the DOJ, in fact, did implement a program for premium pay pursuant to 5 U.S.C. § 5545(c)(2). Therefore, if they individually qualify, plaintiffs would be entitled to be compensated.

In support of its argument that 5 U.S.C. § 5545(c)(2) is not money mandating, defendant points to *Evans v. United States*, 14 Cl.Ct. 194 (1988), *aff'd mem.*, 862 F.2d 320 (Fed.Cir.1988). The instant case, however, is factually distinguishable from *Evans*. Moreover, this court also believes that, depending on the facts presented in a particular case, the unconditional statement included in the *Evans* opinion, "[t]hus, 5 U.S.C. § 5545(c)(2) is not, in an [sic] of itself, a money mandating statute on which plaintiff can base a claim for relief in this court," *Evans v. United States*, 14 Cl.Ct. at 197, may be overly broad.

In *Evans*, a retired Deputy United States Marshal sought a judgment declaring illegal the government's refusal to include AUO pay in the calculation of his retirement benefits. From 1955 until the fall of 1978, Deputy United States Marshals were compensated for overtime work primarily by the AUO payment system. *Evans v. United States*, 14 Cl.Ct. at 195. However, on September 29, 1978, the Department of Justice completely terminated the use of AUO pay for United States Marshals by issuing a change order to DOJ 1551.4A removing all Deputy Marshals from the appendix listing those employees eligible for AUO. *Id.*

The defendant in *Evans* moved for dismissal alleging that the plaintiff had not pled a money mandating statute and that, therefore, the court lacked jurisdiction to entertain plaintiff's claim. In granting defendant's motion, the court stated "[t]he AUO statute involved herein, 5 U.S.C. § 5545(c)(2), makes the determination of whether AUO should be used as a method of overtime compensation a matter of discretion by the head of the agency." *Id.* at 197. In the *Evans* case the determination challenged was the discretionary decision to cancel the use of AUO for an entire agency. The *Evans* court held that, "[t]he DOJ change order of September 1978 did not discriminate among different Deputy Marshals, but rather eliminated AUO coverage for this entire class of employees." *Id.* at 199. The instant case, by contrast, does not deal with the decision of whether to implement or to cancel an AUO program, but whether or not to pay certain employees, such as the plaintiffs, once the program has been authorized by the agency head and continues to be used to pay AUO to some agency employees.

Although interpreting an earlier version of 5 U.S.C. § 5545(c), the reasoning applied by the Court of Claims in *Byrnes v. United States*, 163 Ct.Cl. 167, 330 F.2d 986 (1963) is instructive. In *Byrnes*, 65 investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, brought suit for AUO compensation under the Federal Employees Pay Act of 1945, as amended in 1954, 5 U.S.C. § 926, a statute which later became 5 U.S.C. § 5545(c). As in the instant case, the words *may* and *shall* both are written into the earlier statute. The word *may* is found in the introductory part of 5 U.S.C. § 926, and the words *shall receive* appear in subsection (2) of the statute. As described in *Byrnes*, the Bureau of Alcohol and Tobacco Tax Division had authorized and paid a 15% annual premium, instead of regular overtime, in all nine of its regions. After three months, however, the payments were discontinued in the San Francisco and Omaha regions, and management in these two regions refused to authorize premium pay or regular overtime pay to their investigators, including plaintiffs. The investigators brought suit claiming they were still called upon to work irregular hours and, therefore, were entitled to AUO as provided to employees in the other regions. The *Byrnes* court found that "[i]n providing for annual premium pay in lieu of regular overtime pay by the 1954 amendment to the Pay Act of 1945 ..., Congress made this provision mandatory when the

head of the department has decided to apply this provision." *Byrnes v. United States*, 163 Ct.Cl. at 175, 330 F.2d at 990. Further, the court commented that, "[c]ertainly Congress in the 1954 amendment to the Pay Act of 1945 never intended that the head of a department could permit arbitrary discrimination between the investigators of the nine regions who were required to perform the same kind of irregular, unscheduled overtime." *Byrnes v. United States*, 163 Ct.Cl. at 176, 330 F.2d at 991. *Byrnes*, like the instant case, dealt with the mandatory pay aspect of the earlier version of subsections (c)(1) and (c)(2) in the AUO statute, once an AUO program had been implemented by an agency. In contrast, *Evans* dealt with the discretionary aspect of whether or not to implement an AUO program for a particular agency, as authorized in the introductory section 5 U.S.C. § 5545(c).

█ Defendant's final argument, although given only cursory attention in defendant's motion to partially dismiss, urges that plaintiffs' claim for backpay should be dismissed, pursuant to RCFC 12(b)(4), for failure to state a claim. A motion to dismiss, pursuant to RCFC 12(b)(4), requires that the court reach its decision based on the evidence presented by the parties. "In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, unchallenged allegations of the complaint should be construed favorably to the pleader." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). In evaluating a motion to dismiss for failure to state a claim, the court must take all "well-pleaded factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Merrick v. United States*, 846 F.2d 725, 726 (Fed.Cir. 1988); *Bath Iron Works Corp. v. United States*, 27 Fed.Cl. 114, 122 (1992). Moreover, in order to determine whether a claim upon which relief can be granted has been stated, the facts obtained from the record should be construed in the light most favorable to the plaintiffs. *Papasan v. Allain*, 478 U.S. at 283, 106 S.Ct. at 2943. A motion to dismiss for failure to state a claim should not be granted by the court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). When deciding a motion to dismiss, however, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

█ The defendant asserts that even if plaintiffs worked overtime hours, as alleged in the complaint, these hours are not compensable because they were not "authorized, approved, or induced by proper authority." It is true that a claim for overtime compensation will not be recognized unless the work was "actually authorized or approved by an appropriate government official." *Gaines v. United States*, 158 Ct.Cl. 497, 500, 1962 WL 9303, *cert. denied*, 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). As the case law has developed, however, this authorization need not necessarily be express. "Overtime work performed with the knowledge and inducement of supervisory personnel is deemed to be 'officially ordered or approved.' The law will treat as issued those orders that ought to have been issued." *Manning v. United States*, 10 Cl.Ct. 651, 663 (1986) (citing *Anderson v. United States*, 201 Ct.Cl. 660, 1973 WL 21343 (1973); *Byrnes v. United States*, 163 Ct.Cl. 167, 330 F.2d 986 (1964); *Aviles v. United States*, 151 Ct.Cl. 1, 1960 WL 8530 (1960); *Bennett v. United States*, 4 Cl.Ct. 330 (1984)). Based on the record before the court, including reports, studies and plaintiffs' presentation of the facts, uncontroverted by the defendant, the court finds sufficient facts have been raised by plaintiffs, which, if supported in further proceedings, could support claims by the plaintiffs for backpay and entitle them to compensation.

## CONCLUSION

Upon careful review of the filings submitted by the parties, the transcript of the oral argument and the pertinent case law, this court finds that, for jurisdictional purposes, plaintiffs have offered an arguable case that 5 U.S.C. § 5545(c) can be read as money mandating. Whether individual plaintiffs qualify for AUO are separate issues to be determined during further proceedings. The defendant's Motion to Partially Dismiss is, therefore, DENIED.

**IT IS SO ORDERED.**