John T. ABRAHAMS, et al.

v.

The UNITED STATES.

Nos. 343–78, 65–79 and 290–81C.

United States Claims Court.

Dec. 9, 1982.

F.G. Enslow, Tacoma, Wash., for plaintiff.

Robert M. Hollis, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

### OPINION

YOCK, Judge:

This civilian pay case involves claims for overtime brought by 158 plaintiffs in three separate petitions, now consolidated. Pursuant to the Federal Employees Pay Act, 5 U.S.C. § 5542(a) (1976), plaintiffs are seeking overtime pay for time spent traveling on a Bureau of Prisons boat to and from their job. On motion for summary judgment, the plaintiffs allege that no material issues of fact exist and that the travel on the boat clearly falls within the statutory provisions entitling them to overtime pay. Defendant's cross-motion for summary judgment, however, argues that the plaintiffs' travel is not within the statutory overtime pay provisions.

For the reasons outlined herein, plaintiffs' motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted, as to those individual employee plaintiffs who cannot meet the standards enunciated herein.

*Facts*

The pertinent facts were stipulated by the parties in this multi-plaintiff overtime pay case and are hereinafter set forth.

The United States Penitentiary, McNeil Island, (hereinafter prison or institution) during the times pertinent to this action, was a Federal Penal Institution operated by the United States Bureau of Prisons. The plaintiffs in this case were all employed at some point in time by the United States Bureau of Prisons and worked at the McNeil Island Penitentiary, which was their official duty station.

The institution occupies an island consisting of 4,413.3 acres located in the Puget Sound, State of Washington, approximately 3 miles west of the town of Steilacoom, Washington. There is no bridge or other land connection to the island and therefore the only access is by water craft. Unauthorized approaches to the facility or landing on the island by boat was prohibited. A limited number of senior key prison employees occupied, along with their families, Government quarters on the island. All other employees resided on the mainland and were required to utilize water transportation for access to the island and their jobs.

Pierce County, Washington, operated a public ferry system which provided passenger and private vehicle service to McNeil Island as well as to Anderson and Keytron Islands. The county ferry schedule, however, was not coordinated with the working hours of the prison facility on McNeil Island and, therefore, as a practical matter, was not used by the employees for the purpose of going to and from work. However, the United States Bureau of Prisons operated passenger boats to transport employees, inmates, and visitors from Steilacoom to McNeil Island and return. The penitentiary owned and operated a dock at Steilacoom which was the only embarkation and debarkation point for individuals using the Bureau of Prisons' boats.

With the exception of certain minor irregular or swing shifts, the institution had three official shifts: day shift running from 8:00 a.m. to 4:30 p.m.; evening shift running from 4:00 p.m. to midnight; and, morning shift running from midnight to 8:00 a.m. The schedule for the passenger boats was designed by the Bureau of Prisons to be coordinated with the times of the prison's work shifts. In this way the boats departed the Steilacoom dock approximately 30 minutes prior to the beginning of a shift on the island, and left McNeil Island 10 minutes after a shift ended. The prison boats, as scheduled, represented the only practical way for prison employees to reach the institution in time to meet the prison's work shifts without undue delay and inconvenience. Travel time to and from the island by means of the prison boats took approximately 20 minutes.

Employees utilizing the passenger boat were required to check in at the federal dock at Steilacoom just prior to the departure of the vessel. The Steilacoom dock facility is designed so that all passengers to the facility must pass through a dock house to be checked in or "cleared" prior to embarking on the passenger boat. This check-in procedure was administered routinely for security purposes to all passengers boarding the boat. The boat trip to or from the island by means of the passenger boat is not considered hazardous or arduous.

The distance from the prison facility and the McNeil Island dock is approximately four city blocks and can be walked in five minutes. With the exception of those individuals assigned to certain watch towers as their official duty stations, all employees walk to the facility from the dock and pass through the facility's main entrance on the way to their assigned work posts. The employees assigned to watch towers were picked up at the dock by motorized vehicle and driven to their work stations.

Failure to board the last boat scheduled to arrive just prior to the beginning of their work shift would make plaintiffs at least one hour late for duty, for which they had to take leave or they would be considered absent without official leave and subject to disciplinary action in accordance with the Bureau of Prisons' official policy.

During the time frame involved in this action, the prison owned and operated four passenger boats having the following loading capacity including crew: *James V. Bennett*—135 passengers; *Steilacoom*—80 passengers; *Captain Connors*—60 passengers; and *P.J. Madigan*—60 passengers. Because of the large capacity of the *James V. Bennett*, it was used as the day shift boat. When it was undergoing servicing, the prison would run two of the smaller boats as shift boats resulting in a larger capacity than would normally be the case when only the *Bennett* was sailing.

Under prison written policy, all inmates, except for the boat crew, were to ride in the forward compartment of the *Bennett* and the *Captain Connors,* and the rear compartment of the *Steilacoom*. In the event the shift boats were overloaded, prison policy detailed a priority list that indicated which personnel were to be removed in order to meet the rated capacity of the boat. In the event a prison employee was bumped off of the shift boat due to overcrowding, that employee was not assigned leave or subjected to disciplinary action for the hour spent waiting for the next passenger boat to go to the island.

A count of prisoners occurred several times a day at the prison. During periods of tightened security, passengers on the 4:40 day shift boat returning to Steilacoom were not allowed to disembark until the count "cleared." This was to allow the prison to determine whether a prison escape had occurred and, if so, to check the boat for escaped prisoners, or to recall some or all of its personnel going off duty to assist in locating the escaped inmate. To the extent such personnel were recalled, they received overtime pay. At all times when the boat was delayed because of prison policy or security, personnel were compensated.

During the boat trip to or from the island, employees of the institution were free to read, sleep, converse with friends, play cards, or perform other personal activities.

The prison boats were commanded by boat captains who were employees of the Bureau of Prisons. By prison policy, the boat operators had primary authority over the operation of the boats and the conduct of all passengers on those boats, including inmates, employees, and visitors. The boat operators had no authority to order or approve overtime for those passengers on the boats who were employees of the prison. It was the boat operators' responsibility to transport mail, packages, memoranda, film or other items from the island to Steilacoom and back. When such items had to be transported, they were given to the boat operators at the McNeil or Steilacoom docks before the boat left the dock. At all times while operating the passenger boats, or clearing passengers going to or from the island, the boat operators were in a paid duty status.

Prisoners who were leaving the island to go on escorted official trips were accompanied by an on-duty custodial officer while on the boat. Prisoners who were leaving the island on, or returning to the island from, a nonescorted furlough were not escorted during the time they were on the boat since they were in the custody of the boat operators. Incoming or outgoing prisoners (other than furloughed or discharged prisoners) traveling on the passenger boats were normally escorted the entire way by United States Marshals, who were not employees of McNeil Island Penitentiary but were in a paid duty status at the time.

Boat operators occasionally requested assistance from prison employees traveling on their boats in order to help in the transport of items under their control such as film or other packages. In addition, boat operators and other supervisory personnel sometimes asked prison employees traveling on their boat to escort visitors from the boat to the main entrance of the prison facility where they were cleared for entrance to the institution. Occasionally, secretaries going off duty would transport on the boat small items such as interoffice memoranda, mail, or the like, which had to be deposited at the Steilacoom dock. This was done out of their sense of responsibility toward their job and the institution. To the extent employees going to and from the island transported small items with them on the boat, or escorted visitors from the institution to the boat or from the boat to the institution, they were not taken out of their way or required to expend any more time than they would ordinarily have taken going to or from the island. In addition, they were able to perform their normal personal activities while on the boat.

All prison employees at McNeil Island were subject to being recalled to duty at the prison at any time, including the time they were off duty at home. When recalled to duty, they received the appropriate amount of overtime that was due.

The plaintiffs in this action are claiming overtime only for the time spent by them on the Bureau of Prisons' passenger boats going to or from their official duty stations. They have specifically stipulated that they are not claiming overtime for preliminary or postliminary work they may have individually performed other than what they may have performed on the prison boat.

### Discussion

Before this court, the plaintiffs contend that under the Federal Employees Pay Act, 5 U.S.C. § 5542(a) (1976), the time spent traveling on the boat is work and hence compensable overtime.

In its cross-motion for summary judgment, the defendant argues that pursuant to the Federal Employees Pay Act, the travel time spent on the prison boats cannot be considered "work", and therefore, should not be compensable as overtime. Moreover, the defendant asserts that even if some of the travel time spent on the boats is considered work because of the employees occasionally carrying small objects on the boat, such as mail or packages for the benefit of the prison, such work performed should be considered *de minimus* and thus not compensable. Finally, defendant urges that the doctrine of laches should bar most,

if not all, of any recovery by the plaintiffs in this case.[1]

### A. Travel as Compensable Overtime

The plaintiffs have alleged that the time spent traveling on the boat to and from their official duty stations constituted work and as such warrants overtime pay. Specifically, they contend that prison policy in the form of written instructions require that the employees report to their shift boat approximately 30 minutes prior to their job actually beginning (time reversed at the ending of a shift), and that such order was primarily, necessarily, and predominantly for the benefit of the agency. Further, if the plaintiffs failed to report to the dock 30 minutes in advance of their shift time, they were subjected to disciplinary action for failing to report on time. By the prison establishing this boat policy, the plaintiffs conclude, they were induced and compelled to spend one hour extra each day fulfilling their employment obligation to their employer without compensation. They also conclude that this travel time was a necessary incident to the performance of their duties and becomes an integrated portion of the work day. Unfortunately for the plaintiffs, however, this reasoning is fallacious and also contrary to well established law. This court finds that the travel time on the boat did not constitute work *per se,* and therefore the plaintiffs cannot recover overtime pay, merely for traveling on the prison boats.

1. The parties have not raised or relied on the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (1976). Accordingly, the court has not addressed the issue.

2. There appears to be some confusion on the part of both parties as to whether 5 U.S.C. § 5542(b)(2)(B) is applicable in this case. The pertinent parts of 5 U.S.C. § 5542(b) reads as follows:

   "(b) For the purpose of this subchapter—
   \* \* \* \* \* \*
   "(2) time spent in a travel status away from the official-duty station of an employee is not hours of employment unless—
   \* \* \* \* \* \*
   "(B) the travel (i) involves the performance of work while traveling, (ii) is incident

The applicable statute in this case is the Federal Employees Pay Act, 5 U.S.C. § 5542(a) (1976) [2] which states in pertinent part:

> For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or \* \* \* in excess of 8 hours in a day, performed by an employee are overtime work \* \* \*. 5 U.S.C. § 5542(a) (1976).

Thus, if plaintiffs are to recover in this case, they must show that: (1) the travel on the boat constituted work and (2) the work was officially ordered or approved.

▇▇▇▇ Regarding the issue of whether the travel constituted work, the law is clear that travel, which has no purpose other than to transport an employee to and from the place where he is to perform his official duties, is not work and is not compensable as overtime. *Barth v. United States,* 215 Ct.Cl. 383, 387, 568 F.2d 1329, 1331 (1978). In the present case, the primary reason for the plaintiffs' travel on the boat was to be transported to and from their official duty stations (jobs) on the island. Prior cases involving employee transportation on Government-owned and operated vehicles (including boats) have also determined that this type of travel to and from a job cannot be considered "work." *Ayres v. United States,* 186 Ct.Cl. 350, 355–58 (1968); *Biggs v. United States,* 152 Ct.Cl. 545, 546–47, 287 F.2d 908, 909–10 (1961); *Ahearn v. United States,* 142 Ct.Cl. 309, 313 (1958), *cert. denied,* 364 U.S. 932, 81 S.Ct. 381, 5 L.Ed.2d

to travel that involves the performance of work while traveling, (iii) is carried out under arduous conditions, or (iv) results from an event which could not be scheduled or controlled administratively."

It appears clear, however, that the provisions of 5 U.S.C. § 5542(b)(2)(B) (1976) are not applicable in this case because the plaintiffs are traveling to and from their official duty stations, and they are not in a travel status away from their official duty stations. Even if these provisions are considered applicable to the plaintiffs' case, however, they would not recover since they cannot bring themselves within any one of the four exceptions that would allow recovery herein.

366 (1961). *See also Mossbauer v. United States,* 541 F.2d 823, 825–26 (9th Cir.1976). Hence, the plaintiffs' travel time on the boat does not constitute work. This is especially true in a situation such as is here present where the plaintiffs have stipulated that they were free on the boat to read, sleep, converse with friends, or perform other personal activities.

■ The plaintiffs, however, point to a specific prison policy (written instructions) that they maintain ordered them to report to the dock 30 minutes in advance of their particular shift and subjected them to disciplinary action if they missed the boat. The instructions that the plaintiffs point to, however, (M31001.1 and 2 attached to the parties' stipulation) do not order what the plaintiffs allege, nor do they have the effect that the plaintiffs say they do. Paragraph one of both documents state:

> It is the policy of this institution to establish and maintain a passenger boat schedule which not only meets the needs of the institution, but which also, insofar as possible, meets the needs of the employees and the Island residents.

Nowhere in these instructions are there any orders to the prison employees to report 30 minutes prior to shift time to avoid disciplinary action, nor, for that matter, do the instructions contain any orders directing the plaintiffs to do any work on the boats.

It is quite true that the effect of missing the appropriate shift boat did subject the employee to disciplinary action, since he would then be approximately one hour late reporting to his official duty station. However, failing to show up at his duty station was the reason for the disciplinary action as opposed to failing to show up at the appropriate shift boat. Moreover, to the extent plaintiffs felt "compelled" or "induced" to take the proper prison boat, it was simply because they, as with all employees, were obligated to arrive at work on time. The practical requirement that plaintiffs make the last scheduled shift boat or else be one hour late for work is no different from that experienced by thousands of commuters whose timely appearance at work is dependent upon their catching a particularly scheduled train or bus. Plaintiffs cannot claim compensation for nothing more than an ordinary commute to work that all employees face. Thus the imposition of a penalty for being late for work cannot be deemed the equivalent of an order to travel on the appropriate boat. Plaintiffs have failed to show either that the travel constituted work or that the work was officially ordered or approved.

Furthermore, as evidenced by the prison boat policy enunciated above, the benefit of having boat transportation supplied by the Government coordinated with the prison work shifts was a distinctly shared benefit. Had the Government chosen not to run prison boats for the benefit of employees reporting for work, but only for the purpose of carrying prisoners, residents and visitors on and off the island, the employees would have been in a real fix. They would have then been dependent on the Pierce County Ferry whose schedules were not coordinated with the employees' workshifts. In any event, the benefit of having these boat runs coordinated with the work shifts of the employees was a mutually-shared benefit and no way rises to the level of the primary or predominant benefit to the Government test as discussed in *Baylor v. United States,* 198 Ct.Cl. 331, 357 (1972). *See also Albright v. United States,* 161 Ct.Cl. 356, 361 (1963).

Finally, a brief mention should be made of plaintiffs' contention contained in its response brief, that because the plaintiffs were required to perform certain preshift and postshift acts prior to boarding the boats (or disembarking upon return), the plaintiffs are due compensable overtime. In this connection, the plaintiffs point to the security check-in and check-out procedures at the mainland dock and to the loading or "bumping" procedure in the event a boat may become overloaded prior to sailing.

■ There are basically two reasons why plaintiffs' contention in this regard lacks merit. First, the parties stipulated that no claim was to be made for preshift or postshift activities in this action. Secondly,

even if the court was inclined to relieve the plaintiffs of their own stipulation, the acts pointed to by the plaintiff are not the type of substantial actions that the courts have found to merit overtime compensation. Time spent in activities such as changing in and out of uniforms, drawing and returning Government-owned firearms, and receiving briefings and instructions for the day's work are such activities that have been held to be necessarily, primarily, and predominantly for the benefit of a Government agency and hence compensable as overtime work. *Baylor v. United States, supra* at 357; *Albright v. United States, supra* at 361. A preliminary security check or a bumping procedure applicable to all passengers on a boat is simply not of this substantial nature and will not warrant the award of any overtime pay.

If, however, certain plaintiffs in this action can clearly demonstrate that they performed a significant amount of work, such as guarding prisoners or moving bulky or significant amounts of packages, and that the work was officially ordered or approved, then recovery may still be possible for them.

### B. *De Minimus* Issue

In the cross-motion for summary judgment, the defendant contends that even if some of the travel on the boat by some of the plaintiffs is considered work (such as carrying mail or packages, etc.), the amount of work and the time involved in performing that work is *de minimus.* The defendant asserts, for example, that the mere carrying of a letter or a package on the boat does not interfere significantly with the plaintiffs' normal free time on the boat. Hence, the defendant argues that the *de minimus* rule is for application in this case and should bar that plaintiff's recovery.

■ The *de minimus* doctrine is applicable in this case and will bar recovery where an employee has only spent insubstantial and insignificant periods of time in preliminary activities. "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *An-*

*derson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946). Thus, in order to clear the *de minimus* hurdle, an employee must first perform some significant type of work or expend some significant effort on a task. Additionally, the employee must spend a substantial amount of time on the task. In reference to what constitutes a substantial amount of time, the United States Court of Claims held recently that work time, which consisted of 10 minutes or less per day is considered *de minimus. Baylor v. United States, supra* at 353, 365–66.

■ Therefore, the plaintiffs, in order to recover in this case, must show that they performed some significant work such as guarding prisoners or moving bulky or significant amounts of mail or packages. Clearly, the mere carrying of a letter or a small package in the context of this case is not, of itself, a significant task. In addition, the work must involve a substantial period of time of at least 10 minutes or more. For example, the lifting of a letter or package onto the boat would not normally involve the requisite amount of time. Thus, the claims of those plaintiffs, who did not perform some significant work of at least 10 minutes duration, must fail under the *de minimus* doctrine.

■ If, however, certain plaintiffs can show that they performed some significant work while traveling; that the work was officially ordered or approved; and that the time involved was sufficient to clear the *de minimus* standard, then recovery may be possible for those plaintiffs.

■ Although the defendant has also asserted the affirmative defense of laches, this defense is not applicable in the context and posture of this case. *See Brandon v. United States,* Ct.Cl., 652 F.2d 69 (1981); *Murphy v. United States,* Ct.Cl. No. 601–77 (order entered January 23, 1980).

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted

regarding those plaintiffs: (1) who only traveled on the boat; or (2) who performed work on the boat without official orders or approval; or (3) whose officially ordered or approved preshift, postshift or on-board work did not involve a significant task of at least 10 minutes per day. Those plaintiffs who performed officially-ordered or approved work not barred by the *de minimus* doctrine herein enunciated, may amend this complaint accordingly within 60 days from the date of this opinion. Absent such filing, a final judgment in this regard will be issued as to any or all of those plaintiffs who do not so amend their complaint and demand further factual proceedings not inconsistent with this opinion.