John ALETTA, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 99–758C.

United States Court of Federal Claims.

March 30, 2006.

Larry J. Adkins, Deputy General Counsel, with whom were Gregory O'Duden, General Counsel, and Robert H. Shriver, III, Assistant Counsel, National Treasury Employees Union, Washington, D.C., for Plaintiffs.

Reginald T. Blades, Jr., with whom were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director, United States

Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

### *OPINION AND ORDER*

WHEELER, Judge.[1]

This case is before the Court on the parties' cross-motions for summary judgment on the issue of liability. Plaintiffs are a certified class of approximately 1,100 Internal Revenue Service ("IRS") lawyers who work in the agency's field offices throughout the United States. Plaintiffs are seeking payment for overtime hours worked without written approval from an authorized agency representative under the Federal Employees Pay Act, 5 U.S.C. §§ 5541–5550b ("FEPA"). Plaintiffs specifically are claiming payment for overtime hours when worked: (a) in connection with travel that was beyond the administrative control of the IRS; or (b) by class members who are under flexible schedules. Plaintiffs acknowledge that their overtime hours were not officially approved by authorized representatives, but assert that they nevertheless are entitled to recovery based upon their interpretation of the statutes and regulations applicable to flexible schedules, and because they were induced, encouraged, and expected to work overtime in meeting the demands of their jobs.

In a very similar case involving lawyers of another agency, the Federal Circuit held that Department of Justice lawyers generally have no claim for overtime pay unless the statutes and regulations requiring approval are followed. *Doe v. United States*, 372 F.3d 1347 (Fed.Cir.2004), *cert. denied* 544 U.S. 904, 125 S.Ct. 1591, 161 L.Ed.2d 277 (2005). For the reasons stated below, the Court concludes that the IRS lawyers also are governed by the decision in *Doe*, as well as the applicable statutes and regulations requiring authorized approval. The Court does not see a legal basis for a different outcome as to

lawyers who work flexible schedules, or for unavoidable travel. Accordingly, Plaintiff's motion for partial summary judgment[2] is DENIED, and Defendant's cross-motion for summary judgment is GRANTED.

### *Factual Background*

The material facts in this case are not in dispute.[3] Plaintiffs are IRS field office lawyers who work on tax litigation, criminal tax, and general litigation matters. Among their tasks, they prepare for trials, appear in court, provide legal advice, and perform investigative work on behalf of the IRS. They represent the United States in cases before the U.S. Tax Court and in tax cases before federal bankruptcy courts. Although the U.S. Tax Court is based in Washington, D.C., it hears cases in many designated cities nationwide. The IRS lawyers travel as needed for court appearances or trials where their cases are pending. As is typical of many litigation lawyers, they work more than eight hours per day or 40 hours per week when necessitated by workload demands, or by Court schedules and deadlines. The overtime hours at issue were not officially approved by an authorized agency representative.

Plaintiffs are employed in positions that are subject to the premium pay provisions of FEPA, 5 U.S.C. §§ 5541–5550b. FEPA provides that hours in excess of 40 hours per week or eight hours per day must be "officially ordered or approved." 5 U.S.C. § 5542(a). The implementing regulations of the Office of Personnel Management ("OPM") provide that overtime hours "may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c) (2005). Travel time can be counted as "hours of employment" if it results from "an event which could not be scheduled or controlled administratively." 5

---

1. This case was transferred to Judge Thomas C. Wheeler on January 19, 2006, pursuant to Rule 40.1(b) of the Rules of the Court of Federal Claims.

2. Plaintiffs styled their motion as one for partial summary judgment because, if they prevailed,

the Court would need to determine damages in the next phase of the case.

3. The facts contained herein are based upon the parties' respective proposed findings of uncontroverted fact, and the responses thereto.

U.S.C § 5542(b)(2)(B)(iv); 5 C.F.R. § 550.112(g)(2)(iv)(2005).

Many of the plaintiff lawyers work "flexible schedules" under the Federal Employees Flexible and Compressed Work Schedules Act, 5 U.S.C. §§ 6120–6133 ("WSA"). Congress enacted the WSA in 1978 to afford federal employees greater flexibility in setting their work schedules. The WSA allows employees to work "flexible" or "compressed" work schedules. Under a "flexible" schedule, an employee can earn "credit hours" by working more than eight hours per day. These "credit hours" may be used to shorten a subsequent work day to less than eight hours. *See* 5 U.S.C. §§ 6121(4), 6122. A "compressed" schedule is one in which an employee works 80 hours during each two-week pay period, but does so in less than 10 days. *See* 5 U.S.C. §§ 6121(5), 6127. For purposes of flexible schedule programs, "overtime hours" means hours in excess of eight hours per day or 40 hours per week "which are officially ordered in advance, but does not include credit hours." 5 U.S.C § 6121(6). If requested by an employee, the head of an agency may grant an employee compensatory time off for overtime hours, in lieu of payment. 5 U.S.C. § 6123(a)(1).

The time period of Plaintiffs' claim is from September 1993 until the date of the Court's decision.[4] During this period, the parties agree that members of the plaintiff class have worked, including time spent traveling, more than eight hours in a day, or more than 40 hours in an administrative work week. In some circumstances, Plaintiffs have received overtime compensation, but in other cases, they have not. For the entire period of Plaintiffs' claim, the agency has had in place a procedure for employees to request, and for authorized officials to approve, overtime hours and compensation. Chief Counsel Directives Manual ("CCDM") 30.6.1.4.3; CCDM Exhibit 30.6.1–15, Form 2787, "Authorization and Report of Overtime Worked." Plaintiffs did not use this procedure for any of the hours for which they now claim additional compensation.

*Contentions of the Parties*

Plaintiffs assert that time spent traveling for out-of-town court appearances must be considered "hours of employment" because the travel results from events that cannot be "scheduled or controlled administratively." 5 U.S.C. § 5542(b)(2)(B)(iv). Plaintiffs claim an unqualified right to compensation for these hours, but state that they have not been compensated when the travel hours constitute overtime. They contend that approval by an authorized agency representative is not required for their overtime travel, or alternatively, that a supervisor's approval of a lawyer's travel vouchers constitutes approval of the hours of work spent traveling.

Plaintiffs contend that IRS lawyers who work "flexible schedules" under the WSA are entitled to recovery for any overtime hours that were induced, encouraged, or expected. In making this argument, Plaintiffs argue that the Federal Circuit's 2004 decision in *Doe v. United States*, 372 F.3d 1347, does not apply to lawyers who work flexible schedules, and they seek to resurrect the *Anderson* line of cases from our predecessor court, the U.S. Court of Claims, holding that overtime payments are authorized in some circumstances where induced, encouraged, or expected. *Anderson v. United States*, 136 Ct.Cl. 365 (1956); *see also, Byrnes v. United States*, 163 Ct.Cl. 167, 330 F.2d 986 (1963); *Adams v. United States*, 162 Ct.Cl. 766, 1963 WL 8610 (1963). Plaintiffs assert that, for lawyers working flexible schedules, there is no requirement for a written order authorizing the overtime.

In response, Defendant contends simply that the Federal Circuit's *Doe* decision governs this case, and that *Doe* expressly overruled the *Anderson* line of cases upon which Plaintiffs rely. Defendant states that travel hours, just because they may constitute "hours of employment" under FEPA, does not make them compensable as authorized overtime. The travel hours still must be officially approved and authorized in writing as compensable overtime under 5 U.S.C.

---

**4.** The time period is measured from six years prior to the filing of Plaintiff's action on September 9, 1999. Six years is the limitation period for bringing a claim of this type against the United States. *See* 28 U.S.C. § 2401(a).

§ 5542(a) and 5 C.F.R. § 550.111(c). Defendant also argues that Plaintiffs have overlooked 5 U.S.C. § 6123, "Flexible Schedules; computation of premium pay," which Defendant says is the one statute providing for overtime for employees who work flexible schedules. Defendant's chief argument is that, without the authorized approvals required by statute and regulation, Plaintiffs cannot recover.

### Discussion

#### I. Summary Judgment is Appropriate

Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. *Seal–Flex, Inc. v. Athletic Track and Court Const.,* 98 F.3d 1318, 1321 (Fed.Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." *Id.* Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

Where both parties argue in favor of summary judgment and allege an absence of any genuine issues of material fact, the Court still must determine independently the appropriateness of summary disposition in a particular case. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987)). The Supreme Court has emphasized that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action ....'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted).

Here, the parties have submitted cross-motions for summary judgment on the issue of liability. Plaintiffs filed a 96–paragraph Statement of Material Facts Not in Dispute with their September 16, 2005 motion for partial summary judgment. Plaintiffs' Statement of Material Facts contained detailed information about the job duties of the class members, timekeeping and basic office work requirements, factors contributing to the need to work uncompensated hours, and compensation for excess hours worked, to which Defendant responded with a mix of agreements and disagreements. In contrast, Defendant submitted a much shorter, six-paragraph set of Proposed Findings of Uncontroverted Facts with its November 7, 2005 opposition and cross-motion for summary judgment.

Where there are disputed facts, the Court may still grant summary judgment if it determines that the factual disputes are not material to the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *L.P. Consulting Group, Inc. v. United States,* 66 Fed.Cl. 238, 240 (2005); *Cornejo–Ortega v. United States,* 61 Fed.Cl. 371, 373 (2004). In the present action, the Court concludes that the areas of factual disagreement do not make any difference in the outcome of the case, and that summary judgment should be granted for Defendant. In so ruling, the Court has reviewed the evidence and drawn all reasonable inferences in the light most favorable to Plaintiffs. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

#### II. FEPA's Framework for Overtime Compensation

This case essentially presents issues of statutory interpretation of FEPA and WSA, as well as OPM's implementing regulations. Congress first enacted FEPA in 1945. Federal Employees Pay Act of 1945, ch. 212, 59 Stat. 296 (1945) (initially codified at 5 U.S.C.

§ 911; recodified as amended at 5 U.S.C. § 5542). FEPA mandates overtime compensation to federal employees in Grade 15 or below for "hours of work officially ordered or approved in excess of 40 hours in an administrative work week." 5 U.S.C. § 5542(a). An employee may not receive overtime if such payment would increase the employee's aggregate pay for any pay period in excess of the maximum rate for Grade 15 employees. 5 U.S.C. § 5547(a). FEPA permits the head of an agency, upon request of an employee, to "grant the employee compensatory time off from his scheduled tour of duty instead of payment under section 5542." 5 U.S.C. § 5543(a)(1). The head of an agency also may, with the approval of OPM, grant annual premium pay of up to 25 percent instead of overtime compensation when "an employee [is] in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require the employee to remain on duty." 5 U.S.C. § 5545(c)(2); *see generally, Doe v. United States*, 372 F.3d at 1351–52 (discussing origins of FEPA and relevant premium pay provisions).

Originally, FEPA delegated rule-making authority to the Civil Service Commission, providing that "the Civil Service Commission is hereby authorized to issue such regulations ... as may be necessary for the administration of the foregoing provisions of this Act." Ch. 212, 59 Stat. at 304. OPM replaced the Civil Service Commission in 1978, and OPM has since been responsible for FEPA regulations under identical statutory language. *See* Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 906(a)(2), 92 Stat. 1111, 1224; *see also* 5 U.S.C. § 5548.

OPM, and before it the Civil Service Commission, have had substantially the same regulation since 1945 regarding "Authorization of overtime pay." The regulation currently states: "Overtime work in excess of any included in a regularly scheduled administrative workweek may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically

delegated." 5 C.F.R. § 550.111(c). The Federal Circuit has found this regulation to be a valid and enforceable exercise of OPM's authority to implement FEPA. *Doe v. United States*, 372 F.3d at 1354–62. The question presented is whether the requirement for approval by an authorized agency representative extends to Plaintiffs claims' for (1) overtime travel and (2) employees who work flexible schedules.

### III. *Overtime Travel*

■ The Court accepts for purposes of analysis that much of Plaintiffs' out-of-town travel is dictated by caseload demands and court calendaring, and therefore results from events that cannot "be scheduled or controlled administratively." 5 U.S.C. § 5542(b)(2)(B)(iv). As such, the out-of-town travel constitutes "hours of employment" in calculating the hours worked by a member of the plaintiff class in an administrative workweek. *Id.* However, as Defendant points out, the fact that the hours are counted as part of an administrative work week does not automatically make those hours compensable overtime. The question remains whether Plaintiffs must show an official order or approval, and whether it must be in writing, to make the overtime compensable.

The regulation requiring a written approval, 5 C.F.R. § 550.111(c), unquestionably applies to the FEPA section at issue, 5 U.S.C. § 5542(b), unless there exists some explicit exception stating that travel hours do not require written approval. The introductory section of OPM's "Premium Pay" regulations, 5 C.F.R. § 550.101, contains a host of employee and service categories "to which this subpart does not apply." *Id.* at (b), (c), (d). There is no reference to travel hours in any of these exceptions. Moreover, 5 C.F.R. § 550.112, "Computation of overtime work," contains a provision called "Time in travel status" that repeats the requirements of 5 U.S.C. § 5542(b), stating that out-of-town travel can constitute hours of employment if it results from events that cannot "be scheduled or controlled administratively." 5 C.F.R. § 550.112(g)(2)(iv). The record is devoid of any statutory or regulatory provision excepting travel hours from the requirement

for authorized written approval if it is to constitute compensable overtime.

Plaintiffs rely upon three cases to argue that overtime travel hours, once found to be "hours of employment," do not require any official approval or authorization. *Knowles v. United States*, 29 Fed.Cl. 393 (1993); *Abrahams v. United States*, 1 Cl.Ct. 305 (1982); *Depart. of Hous. & Urban Dev.— Compensatory Time for Travel During Non-duty Hours*, 70 Comp. Gen. 77 (1990). Plaintiffs have misread these decisions, and in any case, they are from the more lenient pre-*Doe* era, when the applicable statutes and regulations regarding overtime approval were not always interpreted consistently.

*Knowles* does not address the issue of whether overtime travel hours must be officially ordered and approved, but simply holds that chauffeur hours constitute the "performance of work while traveling" under 5 U.S.C. § 5544(a). *Knowles*, 29 Fed.Cl. at 394. Similarly, the Comptroller General's decision in *HUD* does not address the issue of approval, but focuses on whether overtime travel constitutes work. A court's failure to address a proposition, even when it might, does not constitute binding authority either for or against the proposition. *Cooper Indus., Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citing *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925)). *Abrahams* actually supports Defendant, not Plaintiffs, in requiring a dual finding that: (1) overtime travel constitutes work; and (2) the work was officially ordered and approved. *Abrahams*, 1 Cl.Ct. at 309.

■ In the alternative, Plaintiffs contend that, if authorized approval is necessary, the approval of the lawyer's travel vouchers upon completion of the travel constitutes the requisite written authorization. However, a travel voucher approves only the travel and the reimbursement of the properly incurred travel expenses. A travel voucher is not a request by an employee, or an order or approval by an authorized official, for extra hours of work or overtime compensation for the time spent traveling. A reviewing supervisor seemingly would not know from travel vouchers alone whether or to what extent any overtime hours had been worked. As noted, *supra*, the IRS has a Chief Counsel Directives Manual that explains how to request and authorize overtime, including a Form 2787, "Authorization and Report of Overtime Worked," but Plaintiffs did not use this procedure for any of the hours claimed.

Some older Court of Claims decisions, such as *Tabbutt v. United States*, 121 Ct.Cl. 495 (1952), are instructive here. In *Tabbutt*, the Court of Claims rejected a claim for overtime compensation brought by IRS investigators who alleged that their supervisors had approved daily work records reflecting overtime. The Court held that the supervisors' approval of these daily reports "could hardly be said to take the place of an order for these men to work overtime, or of an approval of their claim to compensation for having done so." *Id.* at 505, 1952 WL 5985. The Court observed:

> The findings show that neither the Administrative Assistant to the Secretary of the Treasury, nor the Commissioner of Internal Revenue, nor the Director of Personnel of the Bureau of Internal Revenue ever ordered or approved the overtime worked by the plaintiffs in these cases. None of them ordered or approved it in advance, nor did they ratify it after the work had been done. No request therefor was ever made.

*Id.* Accord, *Post v. United States*, 121 Ct.Cl. 94, 99, 1951 WL 5358 (1951) (Civil Service Commission writing regulation is "a necessary safeguard against subjecting the Government to improper expense"); *Gaines v. United States*, 132 Ct.Cl. 408, 131 F.Supp. 925, 926–27 (Ct.Cl.1955) (on overtime claim of Civil Aeronautics Administration employee in a position requiring a "considerable amount of travel," Court held that "any claim [for overtime under FEPA] must be based on the performance of overtime services which were expressly authorized or approved in writing by an officer or employee to whom such authority had been specifically delegated").

The Federal Circuit recently affirmed the vitality of these older Court of Claims decisions in *Doe v. United States*, 372 F.3d at 1352–53. The OPM writing requirement applies to the Plaintiffs claims for overtime travel, and the approval of travel vouchers upon completion of the travel does not constitute the necessary written approval. Plaintiffs' claim for overtime travel accordingly is denied.

### IV. *Employees Working Flexible Schedules*

■ With the enactment of the WSA in 1978, Congress introduced the availability of flexible and compressed work schedules for federal employees. Pub.L. No. 95–390, 92 Stat. 755 (1978). The concept began as a three-year experimental program, and later became permanent. Pub.L. No. 95–390, 92 Stat. 755 (1978) (initiating the program), Pub.L. No. 99–196, § 1, 99 Stat. 1350 (1985) (making the program permanent).

In adopting a new flexible and compressed work schedule program, Congress had to consider whether any changes were needed in the mechanism for authorizing and paying for overtime hours. Congress made one such change in the definition of "overtime hours," which when used with respect to flexible schedule programs, must be "officially ordered in advance." 5 U.S.C. § 6121(6). Previously, the order and approval did not need to be "in advance," so long as it was approved in writing by an officer or employee to whom authority had been specifically delegated. 5 U.S.C. § 5542(a); 5 C.F.R. § 550.111(c). According to the legislative history, Congress added the "ordered in advance" requirement for the following reason:

> The requirement that overtime be ordered in advance eliminates the problem which would arise under a flexible schedule if an agency were required to determine, after the fact, whether it is appropriate to approve as "overtime," hours in excess of 8 hours per day or 40 hours per week which an employee voluntarily elected to work.

H.R.Rep. No. 97–433, at 10 (1982), U.S.Code Cong. & Admin.News 1982, pp. 565, 572. In another section of the WSA, 5 U.S.C. § 6123(a), "Flexible schedules; computation of premium pay," Congress authorized the head of an agency, on request of the employee, to grant the employee compensatory time off in lieu of payment for overtime hours. *Id.*

Plaintiffs contend that overtime hours for employees working flexible schedules need not be approved in writing, but need only be induced, encouraged, or expected. *Anderson v. United States*, 136 Ct.Cl. 365, 1956 WL 8341 (1956). According to Plaintiffs, since Congress and OPM did not include a requirement for written approval of overtime in the WSA's statutory or regulatory provisions, the overtime need not be approved in writing. However, Plaintiffs assertion is in error upon close examination of the statutory and regulatory scheme. Congress in fact was careful to retain the FEPA overtime approval requirements, subject only to the two modifications for advance approval and compensatory time off noted above. The following are four examples demonstrating the clear relationship between the FEPA and WSA overtime provisions:

- In 5 U.S.C. § 6123, the same WSA section noted above, Congress provided in subsection (a)(1) that the head of an agency may, upon request of an employee, grant the employee compensatory time off in lieu of payment for such overtime hours "notwithstanding the provisions of sections 5542(a), 5543(a)(1) and section 5544(a) of this title ... or any other provision of law." 5 U.S.C. § 6123(a)(1). However, in the next subsection, the statute states "or (2) [the employee] shall be compensated for such overtime *in accordance with such provisions,* as applicable." *Id.* at (a)(2) (emphasis added). The phrase "in accordance with such provisions," can only refer to the sections listed in subsection (a)(1). Section 5542(a) is the section of FEPA requiring overtime hours to be "officially ordered or approved."

- In 5 U.S.C. § 6128, "Compressed schedules; computation of premium pay," the statute provides that "[t]he provisions of sections 5542(a) and 5544(a) of this title ... shall not apply to the hours which constitute a compressed schedule." 5

U.S.C. § 6128(a). In the next subsection, however, the statute says that "[i]n the case of any full-time employee, hours worked in excess of the compressed schedule shall be overtime hours and shall be paid for *as provided by the applicable provisions referred to in subsection (a) of this section.*" *Id.* at (b) (emphasis added). Again, the reference to the applicable provisions in subsection (a) includes section 5542(a), FEPA's requirement that overtime hours be "officially ordered or approved."

- When Congress first adopted the WSA as an experimental program in 1978, the Act contained a section 103 similar to the current section in 5 U.S.C. § 6123 providing that employees participating in the flexible schedule "experiment" could receive compensatory time off in lieu of payment for overtime, or the employees could be compensated for overtime hours "in accordance with such provisions, as applicable." 5 U.S.C. § 6101 note (2000) (WSA Sec. 103(a)(2)). Once again, the phrase "in accordance with such provisions" means the sections identified in subsection (a)(1), including the section 5542(a) FEPA requirement that overtime hours be "officially ordered or approved."

- The OPM regulations implementing the WSA also connect flexible schedule overtime to the FEPA regulation requiring approval in writing. In 5 C.F.R. § 610.111(d) (2005), the regulation states in pertinent part that a "flexible or compressed work schedule is a scheduled tour of duty and all work performed by an employee within the basic work requirement *is considered regularly scheduled work* for premium pay and hours of duty purposes." *Id.* (emphasis added). This regulation tracks with OPM's FEPA overtime regulation providing that "[o]vertime work in excess of any

included in *a regularly scheduled administrative workweek* may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c) (2005) (emphasis added). Also of significance, the statutory authority for 5 C.F.R. § 610.111 includes both 5 U.S.C. § 6101(c)(WSA) and 5 U.S.C. § 5548 (FEPA).[5]

Moreover, the Federal Circuit in *Doe v. United States*, 372 F.3d 1347, specifically addressed the *Anderson* line of cases[6] upon which Plaintiffs rely. The Government argued persuasively in *Doe* that the Supreme Court's decision in *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) had overruled *Anderson*. *Hansen* involved the requirement of a written application for benefits under the Social Security Act, where benefits could be paid retroactively for 12 months prior to the filing of the application. The plaintiff in *Hansen* had applied orally for benefits, but had been told erroneously by the Social Security administrator that she was not entitled to benefits, and failed to inform her that the regulations required her to file a written application. *Id.* at 786–87, 101 S.Ct. 1468. When the plaintiff learned that she was entitled to benefits, she filed a written application, and claimed retroactive benefits for the 12 months prior to her oral application. Rather than suggesting that the writing requirement was entirely invalid, the plaintiff contended that the regulation was entitled to less respect than the substantive policies of the statute, and that the agency could be estopped from relying on the regulation's writing requirement. The Supreme Court held in *Hansen* that:

> Congress expressly provided in the Act that only one who "has filed application" for benefits may receive them, and it delegated to petitioner the task of providing by

---

**5.** Plaintiffs also rely on proposed regulations from OPM that have been pending since January 5, 2005. 70 Fed.Reg. 1068 (Jan. 5, 2005). Plaintiffs point to the absence of any requirement for written approval of overtime in these proposed regulations. With such clear instructions from the existing FEPA and WSA statutes and regulations, the Court declines to give any weight to regulations that have not been adopted.

**6.** *Anderson v. United States*, 136 Ct.Cl. 365, 1956 WL 8341 (1956); *see also, Byrnes v. United States*, 163 Ct.Cl. 167, 330 F.2d 986 (1963); *Adams v. United States*, 162 Ct.Cl. 766, 1963 WL 8610 (1963).

regulation the requisite manner of application. A court is no more authorized to overlook the valid regulation requiring that application be in writing than it is to overlook any other valid requirement for the receipt of benefits.

Schweiker v. Hansen, 450 U.S. at 790, 101 S.Ct. 1468.

The Federal Circuit in Doe also looked to Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), where the plaintiff, a recipient of a federal disability annuity, was given an outdated publication incorrectly advising him that he could work without forfeiting his disability payments. Once the plaintiff began working, his disability payments were stopped. He argued that the Government was estopped from terminating his benefits because it had given him incorrect advice. Relying upon Hansen, the Supreme Court rejected plaintiff's estoppel claim because "the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." OPM v. Richmond, 496 U.S. at 426, 429, 110 S.Ct. 2465.

Persuaded by the Supreme Court's holdings in Hansen and Richmond, the Federal Circuit rejected the Anderson line of cases, and held that the regulation requiring a written authorization for overtime hours must be enforced like any other valid requirement. The Court stated in Doe:

> In light of Hansen and Richmond, we are compelled to hold that the Anderson line of cases is no longer good law and that the written order requirement is not invalid on the ground that it imposes a procedural requirement that limits the right to overtime compensation under the statute or because it is inequitable.

Doe v. United States, 372 F.3d at 1357. The Federal Circuit noted that it is "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." Id. at 1356, citing Boulez v. Comm'r, 810 F.2d 209, 218 n. 68 (D.C.Cir.1987), quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The Federal Circuit also embraced the instruction from Boulez that "no distinction between substantive and procedural requirements suffices to mitigate the court's responsibility to ensure observance of regulations governing claims on the public fisc." Doe, 372 F.3d at 1356, quoting Boulez, at 218 n. 68, citing Hansen, 450 U.S. at 790, 101 S.Ct. 1468.

To summarize, the Court finds that the overtime approval requirements in 5 U.S.C. § 5542(a) and in 5 C.F.R. § 550.111(c) apply equally to employees on flexible or compressed schedules as they do to employees working standard work schedules. The statutes and regulations establishing overtime pay procedures for employees on flexible and compressed schedules, 5 U.S.C. §§ 6123, 6128, clearly reference and adopt the overtime procedures for employees on standard work schedules. In fact, Congress has added a requirement for "advance" approval for employees on flexible schedules. 5 U.S.C. § 6121(6). The Court sees no basis for sustaining Plaintiffs' interpretation that employees on flexible schedules should not be subject to a requirement for written authorization for overtime. The Court cannot accept the idea that employees on flexible schedules should have a more lenient overtime approval procedure than employees on standard schedules. The Anderson line of cases upon which Plaintiffs rely to argue that overtime is compensable when induced, encouraged, and expected has been overruled by Doe v. United States, 372 F.3d 1347. The Court will not set aside valid regulations intended to protect the public fisc, and which allow federal agencies to control their liability for overtime.

### Conclusion

In reaching the decision explained above, the Court nevertheless is sympathetic to the office conditions of any federal agency where employees may be expected to work uncompensated overtime. Yet, the fact remains that the IRS field offices employ a procedure and form in the Chief Counsel Directives Manual that is available for the request and approval of overtime compensation, but was not used by the Plaintiffs' class for the overtime hours claimed in this case. For lawyers who react to the deadlines of court schedules and the demands of litigation as a way of life,

the law provides another potential avenue for relief—annual premium pay of 25 percent instead of overtime compensation where "the hours of duty cannot be controlled administratively" and where there are "substantial amounts of irregular, unscheduled overtime duty." 5 U.S.C. § 5545(c)(2). The use of this provision may be appropriate for some members of the Plaintiffs' class. As the Court noted in *Doe*, this decision should not be seen as a license for agencies to evade the requirements of FEPA and to coerce uncompensated overtime from employees. *See Doe*, 372 F.3d at 1364. The agencies would know best if they need to reexamine the whole overtime question and seek a government-wide solution. *Id.* Nevertheless, on the facts presented, the Court finds as a matter of law that Plaintiffs are not entitled to recover.

Accordingly, Plaintiffs' motion for partial summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED. The Clerk of the Court shall dismiss Plaintiffs' Complaint with prejudice. Each party shall bear its own costs.

IT IS SO ORDERED.